KETHLEDGE, J., delivered the opinion of the court, in which NORRIS, J., joined. COLE, J. (pp. 722-26), delivered a separate dissenting opinion.
OPINION
KETHLEDGE, Circuit Judge.
Big Dipper Entertainment and Aquarius Investments (collectively, “Big Dipper”) brought this § 1983 action against the city of Warren, Michigan, challenging certain ordinances that regulate the licensing and location of sexually oriented businesses. The district court granted Warren’s motion for summary judgment. On appeal, Big Dipper argues primarily that Warren’s restrictions upon the location of adult businesses are unconstitutional. We disagree, and affirm.
I.
On October 11, 2005, the Warren city council amended the city code to restrict the location of adult businesses as follows:
The site for the sexually oriented business must be located more than seven hundred fifty (750) feet from the nearest lot line [of] any of the following zoning districts: R-l-A, R-l-B, R-l-C, R-l-P, R-2, R-3, R-3-A, R-4, R-5, any mixed residential zone such as Planned Unit Development or the Downtown District.
Warren, Mich., Code, Zoning App’x art. XIV, § 14.01(s).
On February 1, 2006, Warren published a notice of intent to amend § 14.01(s) once again, this time to “prohibit[ ] the location of sexually oriented businesses within the boundaries of the Warren Downtown Development Authority.” To maintain the status quo during consideration of the proposed amendment, the city council temporarily barred the issuance of new licenses for adult businesses in the downtown Warren area. The temporary bar took effect on February 15, 2006.
On February 14, Big Dipper’s sole owner, Timothy Sosnovske, delivered to the Warren city clerk an application for a sexually oriented business license. The application sought permission to operate a topless bar on a parcel of land located at 7001 Convention Boulevard in Warren. Per the city code, the clerk was supposed to act on the application within 20 days. The clerk took 24 days to reject Big Dipper’s application.
On March 28, 2006, the city council added the following language to § 14.01(s):
To be consistent with the objective and stated purpose of the Downtown Devel *717 opment Authority Ordinance, Sec. 2-108 et seq., sexually oriented businesses as defined in Chapter 6 of the Code of Ordinances shall be prohibited from locating within the Downtown Development District boundaries as described by Chapter 2 of the Code of Ordinances. As so amended, § 14.01(s) encompasses the 7001 Convention property.
Almost two years later, Big Dipper filed this § 1983 action in federal district court. It claimed that the October 2005 and March 2006 amendments to § 14.01(s) violate the First Amendment and that Warren’s untimely (by four days) rejection of its application acted as a prior restraint upon protected expression. Warren moved for summary judgment as to both claims. The district court granted the motion. This appeal followed.
II.
We review the district court’s grant of summary judgment de novo, viewing the facts in the light most favorable to Big Dipper. Tysinger v. Police Dep’t of City of Zanesville, 463 F.3d 569, 572 (6th Cir. 2006).
A.
Big Dipper claims that § 14.01(s), as amended, is an unconstitutional restriction upon speech. As an initial matter, the speech at issue here is that conveyed by a topless bar; and in a democracy, it is only common sense to say that “society’s interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate[.]” Young v. American Mini Theatres, Inc., 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (Stevens, J., plurality opinion); see also Bronco’s Entertainment, Ltd. v. Charter Township of Van Buren, 421 F.3d 440, 447 (6th Cir. 2005) (same). Democracies need political debate more than they do topless bars in order to function.
The caselaw reflects that reality. Normally a content-based restriction on speech is subject to strict scrutiny. See R.A. V. v. City of St. Paul, 505 U.S. 377, 382-83, 395, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). But zoning ordinances that regulate adult businesses — which typically on their face are content-based — are treated differently. So long as they aim to limit the secondary effects of adult businesses, we treat the ordinances as content-neutral, which means they get less scrutiny. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). So the question whether § 14.01(s) is aimed at secondary effects is the first one we address here.
Big Dipper says the ordinance was not so aimed. In Big Dipper’s view, the real reason that Warren amended § 14.01 (s) was not to limit the secondary effects of adult businesses, but simply to prevent new ones from opening there. This is a difficult claim on which to prevail. “ ‘It is a familiar principle of constitutional law that [courts] will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.’ ” Id. at 48, 106 S.Ct. 925 (quoting United States v. O’Brien, 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). A corollary of that principle is that a city need only show that its “predominate concerns were with the secondary effects” of adult businesses in order to defeat a claim of illicit motive. Id. at 47, 106 S.Ct. 925 (emphasis in original; internal quotation marks omitted).
Warren has made that showing here. The city council received no less than 49 studies and reports concerning the secondary effects of adult businesses before enacting the October 2005 amend *718 ments to its ordinance. Those reports remained valid for purposes of the March 2006 amendment. The council’s minutes of its February 14, 2006 meeting contain discussion about limiting secondary effects and avoiding blight and deterioration in the city. And the council passed a resolution stating that the March 2006 amendment was intended to “halt[ ] property value deterioration,” “eliminate the causes of deterioration” and “eliminate blight.”
It is true, as Big Dipper points out, that, during debate on the amendments, some city-council members made comments that suggested they were hostile to adult businesses. But at most those comments show that, for those members at least, a desire to restrict adult businesses’ speech was “a motivating factor in enacting the ordinance,” id.; and that is precisely the showing the Supreme Court says is not sufficient to trigger heightened scrutiny of this type of ordinance. See id. As a whole, therefore, the record in this case establishes that the amendments to § 14.01 are content-neutral for purposes of our analysis here.
Thus, “[t]he appropriate inquiry in this case,” as in Renton, is whether the “ordinance is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication.” Id. at 50, 106 S.Ct. 925. The district court applied this same test and held that the ordinance passed it.
Although this test has discrete aspects, Big Dipper for the most part does not explain in its appellate briefs how particular aspects of the test were not met here. For example, as we read its briefs, Big Dipper does not argue that controlling secondary effects is not a substantial government interest, or that the city council lacked an empirical basis to conclude that § 14.01(s) furthers that interest. Big Dipper does say in conclusory terms that § 14.01(s) is not “narrowly tailored,” but we do not see how narrow tailoring is much of an issue in this case. Narrow tailoring typically arises as an issue in these cases when the ordinance is sloppily drafted, so that by its terms the ordinance would reach, say, mainstream bookstores that sell Lady Chatterley’s Lover. See, e.g., Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 796-97 (6th Cir.2004). Big Dipper makes no such argument here.
What Big Dipper does argue (sometimes under the heading of narrow tailoring, sometimes not) is that the amended § 14.01(s) is too broad in geographic scope — i.e., that it leaves too few sites available for adult businesses in the city. This argument goes to “the question whether the [Warren] ordinance allows for reasonable alternative avenues of communication.” Renton, 475 U.S. at 53, 106 S.Ct. 925. Big Dipper seeks to draw from the caselaw some minimum percentage or number of acres that the city must leave open to adult businesses, regardless of the other circumstances in the case. The district court took a more grounded approach, measuring, among other things, the demand for adult-business locations in Warren against the supply available under the amended § 14.01(s). And having done so, the district court held that the supply was adequate.
The district court’s methodology was sound. As the Supreme Court has explained, the question with respect to the adequacy of available sites is simply whether the ordinance denies the “[plaintiffjs a reasonable opportunity to open and operate an adult [business] within the city[.]” Id. at 54, 106 S.Ct. 925. That question does not turn on arbitrary percentages or formulas. Depending on the facts of the case, of course, percentages or formulas can be relevant to the outcome; *719 but that does not mean that the same percentage or formula governs in every case. The First Amendment does not prescribe a Uniform Zoning Code.
Instead, the Renton question, by its terms, is fact-intensive. See Christy v. City of Ann Arbor, 824 F.2d 489, 491 (6th Cir.1987) (“each case must be decided according to its specific facts”). One of the relevant facts is demand: whether a certain number of sites affords a plaintiff a “reasonable opportunity” to open an adult business depends, in part, on how many other potential adult businesses seek to crowd in on those sites. The record in this case, unlike some others, contains that information. The district court was right to consider it. Accord Young v. City of Simi Valley, 216 F.3d 807, 822 (9th Cir.2000); Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1254 (11th Cir.1999); Buzzetti v. City of New York, 140 F.3d 134, 140-41 (2d Cir.1998); North Ave. Novelties, Inc. v. City of Chicago, 88 F.3d 441, 445 (7th Cir.1996); Woodall v. City of El Paso, 49 F.3d 1120,1126-27 (5th Cir.1995).
We turn to the district court’s application of this methodology. The court began its analysis by finding that the amended § 14.01(s) left a total of 39 sites available to Big Dipper’s business. (The 7001 Convention Boulevard site was not among them.) Big Dipper criticizes that finding in notably harsh terms, asserting that the district court “made no pretense” of applying the proper summary-judgment standard, that the court’s analysis of the issue (in a 32-page opinion) was “cursory,” that the court “chose to disregard” the “voluminous and detailed analysis” set forth in the report of Big Dipper’s expert, Bruce McLaughlin, and so on. (Big Dipper similarly accuses opposing counsel of making “egregious misstatement[s]” to this court, etc.)
Arguments like these — which casually impugn the motives of the district court or, more commonly, opposing counsel — are regrettably common of late. So we think it worthwhile to comment on them. In our view, a party should think twice about questioning the district court’s integrity or that of opposing counsel. That two persons disagree does not mean that one of them has bad motives. And even in the worst cases, the better practice is usually to lay out the facts and let the court reach its own conclusions.
In any event, Big Dipper cannot back up its charges here. Stripped of hyperbole, Big Dipper’s argument is that various aspects of McLaughlin’s analysis show that § 14.01(s), as amended, restricts Big Dipper to less than 10 potential sites, rather than 39. And Big Dipper says the district court disregarded these aspects of McLaughlin’s analysis in granting summary judgment to the city. The problem with this argument is that, in the district court, Big Dipper did not discuss these aspects of McLaughlin’s analysis any more than the district court did. We have reviewed Big Dipper’s briefs in support of its own motion for summary judgment and in opposition to the City’s motion; and nowhere in those briefs does Big Dipper argue that the number of sites available to it should be reduced from 39 based on McLaughlin’s analysis in his expert report. Big Dipper discusses McLaughlin’s report in support of other arguments, but not in support of the less-than-39 one.
To create a genuine issue of material fact, a party must do more than file an expert report with the district court. It was Big Dipper’s job, not the district court’s, to present argument as to how McLaughlin’s report created genuine issues of material fact as to the number of sites available to Big Dipper’s business. Big Dipper did not make those arguments *720 in the district court, and it cannot make them now. Big Dipper’s arguments as to how McLaughlin’s report supports a sites-available number of less than 39 are waived. See Sigmon Fuel Co. v. Tennessee Valley Auth., 754 F.2d 162, 164-65 (6th Cir.1985).
That leaves two arguments that Big Dipper did make in the district court with respect to the number of sites available to it. First, according to Big Dipper, Warren’s zoning ordinances require industrial lots zoned M-2 — that is, all of the 39 lots at issue here — to have a minimum area of 20,000 square feet. Twelve of the 39 sites here are smaller than 20,000 square feet. Big Dipper argues that those 12 sites should be subtracted from the number deemed available. We think Big Dipper has created a genuine issue of fact on that point. For purposes of our analysis, therefore, we reduce the number of sites available from 39 to 27.
Second, Big Dipper argues that the city’s parking requirements should reduce the number still further. According to Big Dipper, the city requires dance halls to provide one parking space per every 100 square feet of dance floor. Big Dipper does not elaborate as to how, exactly, this provision would affect it; but in any event the provision could only require Big Dipper to build a smaller dance floor than otherwise. That is a commercial concern, not a constitutional one; and “the Supreme Court has made clear that alternative sites need not be viable commercial properties.” Bronco’s Entertainment, 421 F.3d at 452.
The same rule disposes of a related contention, which is that the city’s expert report requires us to trim 14 sites from the district court’s total. But we have already eliminated some of those 14 sites based on the 20,000 square-foot rule. The expert rejected the remainder of them based on commercial considerations, which are again irrelevant for our purposes. Id.
So we are left with 27 as the number of sites available for Big Dipper’s business. Meanwhile, it is undisputed that a total of two applications for adult businesses were filed in the city of Warren during the five years leading up to this lawsuit. That fact makes this case different from others on which Big Dipper relies. A supply of sites more than 13 times greater than the five-year demand is more than ample for constitutional purposes. The district court was correct to grant summary judgment on this claim.
B.
We make shorter work of Big Dipper’s remaining claim. In Big Dipper’s view, the city violated the First Amendment — by imposing a prior restraint on Big Dipper’s speech — when the city took 24 days, rather than 20 as prescribed by the city’s rules, to reject Big Dipper’s application. Big Dipper also contends that the city did not comply with other miscellanea in its licensing rules, which in its view compounds the constitutional violation.
The sort of licensing regime at issue here must contain two procedural safeguards to be constitutional. First, the city must make its decision whether to issue the license “within a specified and reasonable time period during which the status quo is maintained[.]” East Brooks Books, Inc. v. City of Memphis, 48 F.3d 220, 224 (6th Cir.1995) (internal quotation marks omitted). Second, the applicant must be able to obtain prompt judicial review. Id.
Big Dipper’s claim is meritless for the reasons recited by the district court. That the city took 24 days rather than 20 to act on Big Dipper’s application is immaterial for constitutional purposes. See Bronco’s *721 Entertainment, 421 F.3d at 448 (holding that a 44-day period for acting upon the same kind of application was “sufficiently brief’). Moreover, the city maintained the status quo while the application was pending. See East Brooks Books, 48 F.3d at 225. Finally, Big Dipper could have obtained prompt judicial review of the March 2006 licensing decision, but instead chose to do nothing for 20 months before filing this suit in the district court. See Deja Vu of Cincinnati L.L. C. v. Union Township Board of Trustees, 411 F.3d 777, 787-88 (6th Cir.2005). That, in our view, should be the end of any claim that Big Dipper was denied prompt judicial review.
The dissent would grant relief on such a claim nonetheless. In the dissent’s view, Big Dipper’s right to prompt judicial review was violated here, notwithstanding Big Dipper’s own inaction for 20 months, because (the dissent says) it was Warren’s obligation rather than Big Dipper’s to initiate a lawsuit regarding the denial. Thus, the dissent suggests, “the beaches of Normandy” in this case lie with the prior-restraint claim. Dissent at 722.
Where the dissent actually finds itself, however, is at Pas de Calais. As an initial matter, the district court did not address the prompt-judicial-review argument now made by the dissent, for the simple reason that Big Dipper did not make it there. Big Dipper did briefly mention the existence of its right to prompt judicial review in its summary-judgment briefing in the district court. But nowhere did Big Dipper argue that this particular right was violated, much less for the reason that it was Warren’s obligation rather than Big Dipper’s own to file this lawsuit. (We also have our doubts as to whether Big Dipper has even raised the prompt-judicial-review argument before us, but given the Rorschach quality of the briefing on this claim, we do not press the point.) Thus, the argument that Warren imposed a prior restraint upon Big Dipper by denying it prompt judicial review is waived. See Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir.2008).
The argument is meritless as well. The dissent is simply mistaken in asserting that it was Warren’s burden rather than Big Dipper’s to file a lawsuit with respect to the denied application. In FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), a three-Justice plurality specifically “conclude[d] that the First Amendment does not require that the city bear the burden of going to court to effect the denial of a license application or that it bear the burden of proof once in court.” Id. at 227,110 S.Ct. 596 (O’Connor, J., plurality opinion). Three other Justices agreed with the plurality on that point. See id. at 244, 110 S.Ct. 596 (White, J., joined by Rehnquist, C.J., concurring and dissenting); id. at 253, 110 S.Ct. 596 (Scalia, J., concurring and dissenting). The rule cited by the dissent here applies to censorship cases, not licensing ones; and the case that the dissent cites in support of its putative burden-shifting tacitly admits as much. See Deja Vu of Nashville, Inc. v. Metro. Gov’t of Nashville and Davidson County, 274 F.3d 377, 401 n. 5 (6th Cir.2001); see also Odie v. Decatur County, 421 F.3d 386, 390 (6th Cir.2005) (“In the seminal Freedman decision, the Supreme Court suggested that a licensing scheme must place the burden of proof as to whether an applicant’s form of expression is protected on the government. However, [after FW/ PBS ] it now appears that prompt judicial review and preservation of the status quo are the only constitutionally indispensable procedural safeguards” (internal citations omitted)). When six Justices agree on a legal proposition, we are not free to disagree for purposes of our decision.
*722 The relevant safeguard, then, is that “there must be an assurance that a judicial decision, if sought by the applicant, can be obtained seasonably.” Bronco’s Entertainment, 421 F.3d at 444 (emphasis added). Big Dipper challenges Warren’s licensing regime as applied to the facts of this case, rather than facially. And the undisputed fact remains that Big Dipper took 20 months to seek “prompt judicial review.” That is the only delay at issue here. It is true that Warren did not notify Big Dipper of its right to seek judicial review, and that Warren did not commence an administrative hearing with respect to its denial of Big Dipper’s application. Neither of those omissions is commendable, but neither is a constitutional violation either. Nor do those omissions serve to tag Warren with responsibility for Big Dipper’s delay in bringing suit. Big Dipper’s actions throughout the application process demonstrate that it was acutely aware of its rights under the subject ordinance. And — as the existence of this lawsuit itself demonstrates — there was nothing in the licensing regime that prevented Big Dipper from seeking judicial review of Warren’s denial of its application. To the contrary, the ordinance states that, “[i]f any court action challenging the city’s decision or the hearing officer’s decision is initiated, the city shall: 1) consent to expedited briefing and/or disposition of the action, 2) comply with any expedited schedule set by the court, and 3) facilitate prompt judicial review of the proceedings.” Warren Code art. X, § 6-299.
Finally, the dissent is again mistaken in suggesting that “judicial review” means “administrative review” for purposes of our prior-restraint analysis. See Dissent at 723-25. Although, as a factual matter, the cases cited by the dissent did involve ordinances that provided for administrative as well as judicial review, the holdings of those cases provide no support for conflating these different types of review. And the only kind of prompt review that the cases require is “judicial!.]” Bronco’s Entertainment, 421 F.3d at 444.
The reality is that Big Dipper could have brought this lawsuit much sooner than it did. The only delay in obtaining judicial review was its own. Big Dipper’s claim — to the extent it even makes the claim — that it was denied prompt judicial review of its application is meritless.
The district court’s judgment is affirmed.