RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

REGINA ANN MCCORMICK,

        *Plaintiff-Appellant,*

    *v.*

No. 11-3614

MIAMI UNIVERSITY; KAREN MAITLAND
SCHILLING, Dean; TERRI MESSMAN-MOORE;
MARGARET WRIGHT,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:10-cv-345—Susan J. Dlott, Chief District Judge.

Argued: June 5, 2012

Decided and Filed:  September 10, 2012

Before:  KEITH, McKEAGUE, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Dianna M. Anelli, ANELLI HOLFORD, LTD., Dublin, Ohio, for Appellant. Kathleen M. Trafford, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellees  **ON BRIEF:** Dianna M. Anelli, ANELLI HOLFORD, LTD., Dublin, Ohio, for Appellant.  Kathleen M. Trafford, Tracie N. Ransom, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellees.

─────────────────

## OPINION

─────────────────

DAMON J. KEITH, Circuit Judge.  Regina McCormick was pursuing a graduate degree in psychology at Miami University in Ohio when she was diagnosed with several illnesses that slowed her progress in her graduate studies.  After the faculty voted against promoting McCormick to doctoral status, she filed suit against the university and its

1

officials, alleging discrimination on the basis of race and disability in violation of state and federal laws.  To circumvent the expired two-year statute of limitations for a 42 U.S.C. § 1983 claim—which provides an express cause of action against state actors—McCormick asserted federal claims for racial discrimination and retaliation under 42 U.S.C. § 1981.  The district court granted the defendants' motion to dismiss all claims, concluding that McCormick's discrimination claim under § 1981 was barred because § 1983 provided the exclusive means to bring a damages suit against state actors in either their official or individual capacities for violations of § 1981.  The district court dismissed McCormick's Rehabilitation Act and Americans with Disabilities Act (ADA) claims as time-barred.  On appeal, McCormick argues that the district court improperly extended the Supreme Court's holding in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), to bar using §1981 as a mechanism to sue state actors in their individual capacities.  This court has not squarely addressed whether § 1983 provides the exclusive means to sue a state actor acting in their individual capacity for alleged violations of § 1981.  Upon due consideration, we AFFIRM the judgment of the district court.

I.

Miami University's Psychology Department admitted McCormick into its graduate program for the fall semester of 2000.  During her second year of study, in 2002, McCormick was diagnosed with plica syndrome, knee and wrist dysfunction, degenerative disc disease, and rheumatoid arthritis.  McCormick alleges that her illnesses and treatment drastically slowed her progress in her graduate studies by impairing major life functions such as walking and utilizing her arms and hands.  McCormick reported her condition to her advisor and Dean of the Psychology Department, Dr. Karen Schilling.  She also requested reasonable accommodations in the form of additional time within which to complete her PhD.

McCormick further alleged that when her health problems began in 2001, Defendant-Appellee Dr. Terri Messman-Moore agreed to give McCormick a C+ grade in a course to serve as a place holder, allowing McCormick to receive financial aid with

the understanding that the course work would be completed at a later time. However, Dr. Messman-Moore allegedly reneged and required McCormick to retake the class in its entirety.

In January 2003, McCormick received a letter from Dr. Len Mark, on behalf of the psychology faculty, informing her that despite receiving two Cs—which would normally be grounds for dismissal—the faculty would allow her to continue her studies. The letter warned that promotion to doctoral status was unlikely unless she made dramatic improvement in the quality of her work. The letter established time limits within which to complete certain tasks. During the same month, McCormick was diagnosed with an arthritis-related condition in her left wrist that required surgery. McCormick opted to undergo surgery at a future date. She informed Dr. Schilling of her condition and requested additional time within which to complete her assignments.

On May 7, 2003, Dr. Mark wrote another letter to McCormick on behalf of the faculty, expressing disappointment that McCormick was unable to complete her tasks in accordance with the time limits set forth in the January 2003 letter. The letter further warned that, without dramatic improvement, the likelihood of the faculty supporting her promotion to doctoral status was even less than in January 2003.

After receiving the May 2003 letter, McCormick earned a 4.0 grade point average for several semesters. Upon completing the coursework for her master's degree, McCormick earned a cumulative GPA of 3.72. She successfully defended her master's thesis and received an A grade.

On April 28, 2006, in a seven to three vote, the faculty declined to promote McCormick to doctoral status. McCormick alleged that the faculty denied her promotion because she would take too long to complete the dissertation; however, the termination letter that McCormick received did not state a reason for the faculty's decision. After the faculty vote, McCormick's brother telephoned Dr. Schilling, who allegedly discussed with him the pervasiveness of racism within the Psychology Department.

On May 5, 2010, McCormick filed a complaint in federal court alleging that Defendants-Appellees engaged in: (1) disability discrimination in violation of the American with Disabilities Act (ADA), 42 U.S.C. § 12131, Ohio Revised Code §§ 4112.02, 4112.99, and the Rehabilitation Act, 29 U.S.C. § 794; (2) race discrimination in violation of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.99; (3) retaliation in violation of 42 U.S.C. § 1981 and Ohio Revised Code §§ 4112.02, 4112.99; (4) breach of express contract; and (5) breach of public policy. McCormick alleged that the foregoing violations resulted from the Defendants-Appellees' decision not to advance McCormick to doctoral status. McCormick sued the three named faculty members in their individual and official capacities. Defendants-Appellees filed a motion to dismiss on June 6, 2010. On May 5, 2011, the district court entered an order granting the motion to dismiss all claims pursuant to either Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, or Rule 12(b)(6) for lack failure to state a claim upon which relief can be granted. The district court concluded that McCormick's discrimination and retaliation claims under 42 U.S.C. § 1981 failed as a matter of law because such claims cannot be brought under § 1981 against state actors in either an official capacity or an individual capacity. The district court also concluded that the discrimination claims based on the ADA and the Rehabilitation Act were time-barred and that it lacked jurisdiction to hear the state law claims. McCormick filed a timely appeal.

II.

We discuss each of McCormick's claims in turn. McCormick sued Miami University and three of its faculty members, both in their individual and official capacities, for alleged violations of state and federal law. McCormick's complaint sought both injunctive relief and money damages. We respectively organize McCormick's claims into those brought under § 1981, the Rehabilitation Act, the ADA, and state laws.

**Standard of Review**

We review de novo a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009), and Rule 12(b)(6), *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

A plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); Fed. R. Civ. P. 8(a)(2). A complaint can survive a Rule 12(b)(6) motion to dismiss without having detailed factual allegations, but the complaint must contain more than conclusions and an unsubstantiated recitation of the necessary elements of a claim. *Id.* We assume the veracity of well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

Challenges to subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) are categorized as either a facial attack or a factual attack. "Under a facial attack, all of the allegations in the complaint must be taken as true . . . . Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

**Section 1981 Claims**

*§ 1981 Claims Against State Actors Sued in their Individual Capacity*

The foremost issue presented in this appeal is whether § 1983's express cause of action against state actors precludes using § 1981 as a mechanism to sue state actors for money damages in their individual capacity. In *Jett v. Dallas Independent School District*, the Supreme Court resolved a similar issue regarding § 1981 suits against local governmental units. 491 U.S. 701. The *Jett* Court held that §1983 provided the exclusive federal damages remedy for a claim against a state actor accused of violating

rights secured by §1981.  *Id.* at 735.  McCormick claims that the holding in *Jett* is limited to suits against government entities and individuals sued for money damages in their official capacity.  The district court concluded that a state employee cannot be sued in their individual capacity directly under § 1981, reasoning that "it would be illogical to conclude that *Jett* would bar plaintiffs from suing governmental units and state actors in their official capacities directly under § 1981, but not bar such claims against individuals who otherwise qualify as state actors but are sued in their individual capacities." R. 20, Dist. Ct. Order at 20-21.

*Jett* involved a §1981 and §1983 claim against the Dallas Independent School District (DISD) and a high school principal, in his personal and official capacity, for alleged violations of due process, the First Amendment, and equal protection.  *Id.* at 707-08.  Norman Jett, a white male, was head football coach and athletic director at a predominantly black high school.  *Id.* at 705.  Jett clashed repeatedly with the black high school principal, Dr. Frederick Todd, who successfully recommended that Jett be removed as head coach and athletic director.  *Id.* at 705-06.  At trial, Jett prevailed against Todd and DISD on all counts.  *Id.* at 707.  Todd ultimately settled with Jett, leaving DISD as the remaining defendant on appeal.  *Id.* at 708.[1]

Section 1981 prohibits racial discrimination in the making and enforcement of contracts.  *See Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  At the time *Jett* was decided, 42 U.S.C. § 1981 provided:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

Section 1983 has not been amended since the holding in *Jett* and provides:

> Every person who, under color of any statute, ordinance, regulation,

---

[1]Because Todd settled with plaintiffs before the appeal, the Court did not squarely address § 1981 liability of state actors acting in their individual capacity.

custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In a plurality opinion,[2] the Supreme Court conducted a detailed comparative examination of the legislative history surrounding the adoption of the Civil Rights Act of 1866—the precursor to §1981—and the Act of April 20, 1871, ch. 22, 17 Stat. 13—the precursor to § 1983. The legislative history of § 1981 revealed that the Civil Rights Act of 1866: (1) did not provide for an express damages remedy for its violation; (2) did not create original federal jurisdiction to support a federal damages remedy against state actors; and (3) was designed to punish the "person who, under the color of the law, [did] the act, not the community where the custom prevails." *Jett*, 491 U.S. at 720-21 (internal quotation marks omitted). Upon examining the history of § 1983, the plurality noted that §1983: (1) expressly provided that a person acting under color of state law who was responsible for a deprivation of constitutional rights would "be liable to the party injured in any action at law"; (2) explicitly provided original federal jurisdiction for prosecution of such civil actions; and (3) was perceived by both opponents and proponents as amending and enhancing the protections of the 1866 Act by providing a new civil remedy for its enforcement against state actors. *Id.* at 723-24.

Through a comparative analysis of the respective histories of § 1981 and § 1983, the Court concluded that "the history of the 1866 Act and the 1871 Act . . . indicates that Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Id.* at 731. The plurality noted that strong evidence from the legislative history suggests that the Congress that enacted the precursor to § 1983 believed it was enacting the first and only federal damages remedy for the violation of federal constitutional and statutory rights by state governmental actors. *Id.* at 734.

---

[2]Justice O'Connor announced the judgment of the Court and wrote the opinion of the Court except the parts relying on legislative history. Justice Scalia wrote a concurrence indicating that he joined the opinion except insofar as it relies upon legislative history. *Jett*, 491 U.S. at 738-39 (Scalia, J., concurring).

Moreover, the Court reasoned that it had created an implied right of action under § 1981 against private actors partly because there was no other remedy to address the violations of § 1981. *Id.* at 731-32. However, as the Court observed, "[t]hat is manifestly not the case" as it relates to constitutional and statutory violations committed by state actors. *Id.* at 732. Congress has established its own remedial scheme, through § 1983, to address state actors who violate the law. *Id.* at 733. As such, the Court declined to imply a damages remedy under § 1981 in the context of state actors. *Id.* at 731.

After the *Jett* decision, Congress amended § 1981 by passing the Civil Rights Act of 1991. In relevant part, the 1991 Act added subsection c, which provides:

> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(c). Since the amendment to § 1981, circuit courts have split as to whether the 1991 amendment created a new private cause of action, thereby overruling *Jett*. The Sixth Circuit has continued to hold that *Jett* remains binding authority and that "the express cause of action for damages created by §1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) (quoting *Jett*, 491 U.S. at 733). Our decision in *Arendale* is consistent with authorities in the Third Circuit, *see McGovern v. City of Philadelphia*, 554 F.3d 114, 117-18 (3d Cir. 2009); the Tenth Circuit, *see Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); the Fifth Circuit, *see Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463-64 (5th Cir. 2001); the Eleventh Circuit, *see Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); and the Fourth Circuit, *see Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995). In contrast, the Ninth Circuit has expressly held that the Civil Rights Act of 1991 has overruled the Supreme Court's holding in *Jett*. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1205 (9th Cir. 1996) ("We hold that the Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, and thus statutorily overrules *Jett's* holding that 42 U.S.C. § 1983 provides the

exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981."); *but see Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007) (holding that § 1981 does not contain a cause of action against arms of the state).

Using the reasoning of *Jett,* this circuit has held that a plaintiff cannot use § 1981 to sue a state actor in his or her official capacity. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) ("§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities. An official capacity lawsuit against . . . a state actor[] for constitutional violations, such as race discrimination, cannot be brought under § 1981."). The district court correctly dismissed the § 1981 claims against the individual defendants in their official capacity. However, we have not addressed whether *Jett* bars a § 1981 claim against an individual state actor sued in his or her individual capacity. We now hold that it does.

The reasoning of *Jett* is equally applicable to § 1981 suits against state actors sued in their individual capacity. In reaching its holding, a plurality of the Court relied on the legislative history of § 1981. The plurality observed that prior to § 1983, there was no legislation that provided a federal damages remedy against state actors who violated the law. The Congress that enacted the precursor to § 1983 believed that it was enacting the first and only federal damages remedy against state actors. The Court refused to imply a private right of action under § 1981 in the context of state action—as it had for private action—because unlike in the context of private action, the more specific and express cause of action contained in §1983 provided a mechanism to address a violation of §1981. The Court's logic would naturally extend to the context of individual state actors sued in their individual capacity. Whether the violation of §1981 is committed by a municipality through its policies or custom, or individuals acting under the color of state law, §1983 contains an express clause permitting an aggrieved person to sue the state actor for money damages. Section 1983's express clause permitting these suits obviates the need to imply the same right under the general provisions of § 1981. Accordingly, we conclude that § 1983 is the exclusive mechanism

to vindicate violations of § 1981 by an individual state actor acting in his individual capacity.[3] We therefore AFFIRM the district court's dismissal of the § 1981 claims against the individual defendants acting in their individual capacity.

*Claims against Miami University*

The appellant's § 1981 claims against Miami University are barred by the Eleventh Amendment.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. Const. amend. XI. Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). Miami University is a public university in the state of Ohio. *See* Ohio Rev. Code § 3339. Since a public university qualifies as an arm of the state, *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (applying Eleventh Amendment immunity to a state university as an arm of the state), Miami University "is immune from suit under the Eleventh Amendment because it is well-settled that a plaintiff is precluded from directly suing a State in federal court," *id.* Accordingly, the district court properly dismissed McCormick's claims against Miami University.

Insofar as McCormick is suing Schilling, Messman-Moore, and Wright in their official capacities for money damages, her claim is also barred by the Eleventh

---

[3] Along with the district court, we recognize that in adopting this conclusion, there may be cases in which a plaintiff seeks to hold a state employee liable for § 1981 violations unrelated to the defendant's status as a state employee. Section 1983, however, only permits suits against state actors—i.e. defendants who have exercised power possessed by virtue of state law and made possible only because they were clothed with the authority of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). If the defendant's alleged infringement of § 1981 is not fairly attributable to the state, nothing in our holding bars a plaintiff from bringing suit against the defendant under § 1981 as a private actor. This was certainly not the case here because all three faculty members' alleged misconduct was related to their status as state employees.

Amendment. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (internal citations omitted).  However, the Eleventh Amendment does not preclude a suit against the Defendants-Appellees for prospective injunctive relief. *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000).

**Rehabilitation Act Claims**

McCormick argues that the district court erred in dismissing her Rehabilitation Act claims as time-barred based on a two-year statute of limitations.  McCormick's Rehabilitation Act claims arise from her allegation that Defendants-Appellees' decision not  to promote her was solely because of her disability, and thus prohibited by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  McCormick's complaint was filed on April 23, 2010, four years after the faculty voted against her promotion to doctoral status.  McCormick argues that her Rehabilitation Act claim is governed by a four-year statute of limitations.

Where a federal statute provides a cause of action but does not specify a limitations period, courts determine the appropriate statute of limitations in one of two ways.  First, if the federal cause of action arises under an Act of Congress enacted after December 1, 1990, it is governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Alternatively, courts borrow the most analogous state limitations period, so long as the application of state law is not "at odds with the purpose or operation of federal substantive law." *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (internal quotation marks and citations omitted).

Since the Rehabilitation Act does not specify a statute of limitations, we look to the most analogous state law and adopt its limitations period.  We have held that the applicable statute of limitations for Rehabilitation Act claims brought in Ohio is two years, consistent with the personal injury statute provided in Ohio Revised Code § 2305.10. *See Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533,

536 (6th Cir. 2010); *see also James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000) (citing *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 254 (6th Cir. 1994)). The reason for applying a two-year statute of limitation stems from our decision in *Southerland*, where we determined the appropriate statute of limitations for section 504 claims brought in Kentucky. We acknowledged that claims brought under section 504 of the Rehabilitation Act are closely analogous to § 1983 claims in that both statutes "are civil rights acts that protect persons in the United States from tortlike injuries." *Southerland*, 41 F.3d at 254. As such, courts similarly apply the state statute of limitations for personal injury claims to section 504 claims. *Id.* at 253 (citing *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)); *but see Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993) (declining to apply state personal injury statute of limitations where the state had a statute modeled after and practically identical to the Rehabilitation Act). Accordingly, in *Southerland*, we applied Kentucky's one year statute of limitations for personal injury actions. Here, McCormick's section 504 claim is subject to the two-year limitations period established in Ohio Revised Code § 2305.10.

McCormick, however, maintains that her section 504 claim is subject to § 1658's four-year statute of limitations because the claim was brought pursuant to the 1992 Amendments to the Rehabilitation Act. "[A] cause of action arises under an Act of Congress enacted after December 1, 1990—and therefore is governed by § 1658's four-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones*, 541 U.S. at 382 (internal quotation marks omitted). The 1992 Amendments did not provide McCormick a cause of action that was not available before 1992. "Congress passed the Rehabilitation Act in 1973 to make certain that no individual with a disability would 'be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009) (quoting 29 U.S.C. § 794(a)). McCormick argues that the 1992 amendments "expand[ed] the meaning and the scope of the definition of 'individuals with disabilities,'" Appellant's Br. at 29-30, and she would not have a cause of action under the pre-1992 Amendments Rehabilitations Act because McCormick was not an "individual with a disability" under its former definition.

McCormick does not explain how the amendments created a cause of action previously unavailable to her. McCormick also does not cite to any case law that supports her position that the amendments made her claim possible. The 1992 amendments essentially changed the nomenclature in section 504, 29 U.S.C. § 794(a) & (b), by replacing the word "handicap" with the word "disability." The district court correctly concluded that McCormick's complaint alleged a general disability-based discrimination claim against an institution of higher education and § 794(a) would have allowed this suit before the 1992 amendments. Accordingly, we AFFIRM the district court's dismissal of McCormick's section 504 claim as time-barred under Ohio's two-year limitations period.

**ADA Title II Claim**

McCormick next argues that her ADA claim is governed by a six-year statute of limitations. She claims that Ohio Revised Code § 4112.99, the state discrimination statute, and not a personal injury action, is the most analogous Ohio cause of action to her Title II ADA claim. Section 4112.99 claims are generally subject to a six-year statute of limitations period. *See Meyer v. United Parcel Service, Inc.*, 122 Ohio St. 3d 104, 110, 909 N.E.2d 106, 112 (Ohio 2009) (*citing Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St. 3d 281, 292-93, 638 N.E.2d 991 (Ohio 1994)).

Because there is no statute of limitations under the ADA, courts must borrow a statute of limitations from the most analogous state cause of action. This court has previously applied the statute of limitations for personal injury actions to an ADA claim brought in Kentucky. *Lewis v. Fayette County Detention Ctr.*, No. 99-5538, 2000 WL 556132, at *2 (6th Cir. Apr. 29, 2000) (unpublished case). The court observed:

> State statutes of limitations for personal injuries govern claims under the federal constitution and 42 U.S.C. § 1983. *See Wilson v. Garcia,* 471 U.S. 261, 280 (1985). Under the same *Wilson* analysis, courts faced with ADA or Rehabilitation Act claims have also looked to the state's statute of limitations for personal injury actions.

*Id.* (citing *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998);

*Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550-51 (7th Cir. 1996)). "Congress intended Title II to be consistent with section 504 of the Rehabilitation Act." *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994). Since causes of action brought under Title II and section 504 are "essentially identical," we will "apply the same statute of limitations to both." *Everett*, 138 F.3d at 1409. Accordingly, because we concluded that Ohio's personal injury actions govern the limitations period for section 504 claims, we similarly conclude that Ohio's personal injury actions also govern the limitations period for claims in Ohio arising under Title II of the ADA.

McCormick argues that Ohio Rev. Code § 4112's residual six-year statute of limitations should govern the limitations period. Because § 4112.022 is not modeled after the ADA, the limitations period for the ADA is governed by Ohio's personal injury action. *Cf. Southerland*, 41 F.3d at 254-55 (rejecting statute of limitations provided by the Kentucky Equal Opportunity Act for a Rehabilitation Act claim because the state act was not modeled after the Rehabilitation Act). Section 4112.022 makes it unlawful for an educational institution to discriminate against persons with a disability in admission to an educational program or course of study, while Title II of the ADA broadly prohibits discrimination against persons with a disability in terms of access to any programs, services, or benefits by any "public entity." Because § 4112.022 is not modeled after the ADA and does not set forth its own statute of limitations, the appropriate statute of limitations for a Title II claim is the two-year limitations period applicable to personal injury actions in Ohio. Accordingly, we AFFIRM the district court's dismissal of McCormick's ADA claim as time-barred.

**State Law Claims**

McCormick's state law claims against Miami University and Schilling, Messman-Moore, and Wright in their official capacities are barred by the Eleventh Amendment. As we have observed:

> The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment. . . . The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the

federal court immunity found in the Eleventh Amendment.

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007) (citing *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 117-21 (1984)). Congress has not abrogated the Eleventh Amendment for state law claims, *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542 (2002), nor has Ohio waived sovereign immunity.

McCormick's state law claims against the Defendants-Appellees in their individual capacity are barred under the Ohio Revised Code §§ 9.86 and 2743.02(F). Ohio Revised Code § 9.86 confers immunity on state officers and employees. It provides in relevant part:

> [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Revised Code § 2743.02(F) provides in relevant part:

> A civil action against an officer or employee . . . that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code.

Both provisions work in tandem. As this court observed in *Haynes v. Marshall*, 887 F.2d 700 (6th Cir. 1989):

> Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

887 F.2d at 705. As the district court observed, there was no evidence presented that an Ohio Court of Claims has determined that the defendants were not entitled to immunity. The district court therefore lacked jurisdiction to hear the state claims. Accordingly, the district court properly dismissed the state law claims.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court.