**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 13a0787n.06

No. 12-1367

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRIDGET WALKER, et al., | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| DETROIT PUBLIC SCHOOL DISTRICT, et al. | ) | COURT EASTERN DISTRICT |
| | ) | OF MICHIGAN |
| **Defendants-Appellees.** | ) | |
| | ) | **O P I N I O N** |

**BEFORE: NORRIS, COOK, and McKEAGUE, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** A senseless shooting near Detroit's Henry Ford High School killed one student and seriously injured three others. The victims sued the shooters, but also sought redress from the Detroit school system, the high school principal, and two school security employees. The plaintiffs appeal the district court's judgment in favor of the school defendants on all claims. For the reasons that follow, we affirm the district court judgment.

**I.**

Henry Ford High School has a long history of violence and gang activity. The record shows that fights broke out on average twice a week, and it was not uncommon for guns or other dangerous weapons to be brought to school. In addition, the school has experienced multiple "lockdowns" in response to the presence of such weapons. Police officers testified that they often were summoned to the school to break up fights that would spill out of the school and into the streets. These fights

sometimes involved as many as forty students with another sixty or so watching. The police routinely confiscated handguns, knives, and other weapons from those in the crowd.

On October 16, 2008, Henry Ford students Christopher Walker and William Morton began to fight in a hallway. School security officers Carmen Evans and Colin Lowery broke up the fight and sent Walker and Morton back to their respective classes. After school, Morton, along with Derryck Brantley and Devon Bell, returned and opened fire on a group of students walking away from the school. Walker was killed, and Kejuana McCants, Leon Merriweather, and Malik Slater were injured.

Plaintiffs sued Morton, Brantley, and Bell (the convicted shooters) for assault and battery. They also sued the school district, school principal, and the two security officers on theories under 42 U.S.C. § 1983 of violation of their substantive due process rights by virtue of state-created danger, and under state law theories of gross negligence and public nuisance.

The district court ultimately entered judgments totaling $8 million against each of the shooters on the assault and battery claim. However, it dismissed the school system as a defendant for failure to state a claim and later granted summary judgment in favor of the school employees on all claims.

## II.

Plaintiffs raise three arguments on appeal. First, they contend in support of their §1983 due process claim that the school system's merger of nearby Redford High School into Henry Ford resulted in a "state-created danger" of increased violence due to the known presence of rival gangs at the two schools. Second, they maintain that school officials failed to respond adequately to the

fight between Morton and Walker, and that failure caused a "state-created danger" that led to the shooting. Finally, the plaintiffs argue that a twenty-five year history of serious gang violence in and around Henry Ford represents a "public nuisance" under state law attributable to the school system and the school officials.

We review a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) de novo. *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). The court must "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). However, the factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated another way, the plaintiff must provide "more than conclusions and an unsubstantiated recitation of the necessary elements of a claim." *McCormick*, 693 F.3d at 658.

We also review de novo a district court's grant of summary judgment. *Big Dipper Entm't, L.L.C. v. City of Warren*, 641 F.3d 715, 717 (6th Cir. 2011). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the evidence, we draw all inferences in the light most favorable to the non-moving party. *Big Dipper Entm't, L.L.C.*, 641 F.3d at 717. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III.**

With those precepts in mind, we turn to the plaintiffs' appeal. We first address the alternative state-created danger theories, and then analyze the public nuisance claim.

*1. State-Created Danger*

First, the plaintiffs challenge the district court's dismissal of their claim against the Detroit Public School District based on the theory that the merger of the high schools resulted in a state-created danger. There is no constitutional requirement that the government must "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). In *DeShaney*, government authorities temporarily removed a child from his abusive father, but when the child was later returned home the father beat the child so severely that he suffered brain damage. *Id.* at 192-93. The Court explicitly recognized that the government has a duty to protect an individual while the government has custody or control of that individual, or has otherwise created a special relationship that justifies a duty to protect. *Id.* at 199-200; *see also Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir. 1997). However, the Court noted that the child was not injured while in custody and, though the government returned the child to a situation where the dangers of harm to the child were evident, the government "played no part in their creation, nor did it do anything to render [the child] more vulnerable to them." *DeShaney*, 489 U.S. at 201. Therefore, the Court held that there was no due process violation and the government could not be held liable. *Id.*

Lower courts, including this circuit, have relied on this language to recognize a "state-created danger" exception that creates a duty to protect in limited circumstances. *See, e.g.*, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (The government "may not cause or greatly

increase the risk of harm to its citizens without due process of law through its own affirmative acts.").

To establish a "state-created danger" claim, a plaintiff must show "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007) (quoting *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006)).

It is often difficult in the abstract to characterize whether the government's handling of a situation constitutes an "affirmative act" or a "failure to act." It is an important threshold question because a "failure to act is not an affirmative act under the state-created danger theory." *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (quotation omitted) (collecting numerous cases illustrating a failure to act as insufficient for state-created danger). "Because it is sometimes difficult to distinguish action from inaction . . . we have refined the test. Rather than focusing on the often metaphysical question of whether [officials'] behavior amounts to affirmative conduct or not, we have focused on whether [the victim] was safer before the state action than he was after it." *Koulta*, 477 F.3d at 445-46 (quotation omitted) (holding that briefly detaining an intoxicated driver but subsequently ordering her to leave without determining the extent of intoxication did not "create" or "increase" the dangers of her drunk-driving).

When an official intervenes to protect a person, then later returns the person to "a situation with a preexisting danger," the intervention does not satisfy the affirmative act requirement for state-created danger. *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003). In *Bukowski*, Akron

police took Lisa Bukowski, a mentally challenged nineteen-year-old female, away from the home of thirty-nine year old Leslie Hall, who had communicated with Bukowski online and encouraged her to travel from Pennsylvania to Akron to visit him. *Id.* at 705. In response to a missing persons report and after a trace of Bukowski's online activity, Akron police took custody of her and interviewed her. *Id.* at 705-06. The police recognized that Bukowski was mentally challenged, but concluded she was reasonably capable given her ability to read, write, and travel to Akron on her own. *Id.* at 706. After determining they had no legal authority to detain Bukowski, the police honored her repeated request to return to Hall's residence. *Id.* When Bukowski's parents picked up their daughter from Hall's residence, they learned she had been repeatedly raped, both before and after the police had intervened. *Id.* The Bukowskis argued that the police "affirmatively acted by returning her to Hall's residence." *Id.* at 709. We held that "merely returning a person to a situation with a preexisting danger" cannot serve as an affirmative act for a state-created danger claim. *Id.*; *see also DeShaney*, 489 U.S. at 201.

In addition to showing an affirmative act, a state-created danger claim requires that government "'actions place[d] the victim specifically at risk, as distinguished from a risk that affects the public at large.'" *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 468 (6th Cir. 2006) (quoting *Kallstrom*, 136 F.3d at 1066). The special danger requirement is a significant hurdle for plaintiffs attempting to establish a state-created danger claim. *Id.* ("As with the affirmative act requirement, we have set a high bar for the special danger requirement."). In cases where this court has recognized a state-created danger, "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Jones*, 438 F.3d at 696 (citation omitted).

For the third prong of state-created danger, "[t]he state must have known or clearly should have known that its actions specifically endangered an individual." *Kallstrom*, 136 F.3d at 1066. In

cases "where there is opportunity for reflection and unhurried judgments, a plaintiff must show that the state acted with deliberate indifference." *Arledge v. Franklin Cnty.*, 509 F.3d 258, 263 (6th Cir. 2007) (quotation omitted).

When the state makes complex governance decisions, even if a plaintiff can show that the state had a "subjective awareness of substantial risk of serious injury," a court must "make some assessment that [the state] did not act in furtherance of a countervailing governmental purpose that justified taking that risk." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541 (6th Cir. 2008). As we have noted, "It is in the very nature of deliberative bodies to choose between and among competing policy options, and yet a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass. . . . Many, if not most, governmental policy choices come with risks attached . . . and yet 'it is not a tort for government to govern' by picking one option over another." *Schroder v. City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir. 2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 241 (1974)). As a result, even if a state actor is aware of a substantial risk of harm when it takes action, this court is "unlikely to find deliberate indifference if [the] action was motivated by a countervailing, legitimate governmental purpose." *Hunt*, 542 F.3d at 542.

In this case, neither merging the high schools nor breaking up the fight satisfies the affirmative act element of a state-created danger claim. Though the school board elected to merge the schools, plaintiffs concede that chronic gang-related violence was present both before and after the merger. The plaintiffs cite common sense in support of their claim that merging schools containing rival gang members created or increased the risk of gang violence. However, plaintiffs' claims are in the form of conclusory statements without any factual support. A district court need

not — and should not — accept such conclusory allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Further, even if the plaintiffs had alleged facts facially supporting a reasonable inference that the merger would increase the risk of gang violence after the merger of the schools, the relationship between the merger and the violence that occurred was "too attenuated and indirect to count as an 'affirmative act' that placed [the plaintiffs] in the setting of a state-created peril." *Schroder*, 412 F.3d at 729 (6th Cir. 2005) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980) (holding that decedent's death five months after a parole board granted killer's release "is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law")). We therefore find no error in the district court's dismissal of the plaintiffs' due process claim to the extent it is based on the merger of the high schools.

Turning to the fight on the day of the shooting, the plaintiffs contend that, if school officials had intervened more effectively, the shooting may have been averted. Even assuming this is true, there was no evidence presented that, by breaking up the fight, school officials *created* or *greatly increased* the risk that Morton would return after school and open fire into a crowd. With the benefit of hindsight the school officials may wish they had handled the fight differently. However, their actions fall squarely in line with cases such as *Deshaney*, *Jones*, *Koulta*, *Bukowski*, and others, where state actors have intervened and subsequently returned the victim to a pre-existing danger and such intervention was held not to be an "affirmative act" for state-created danger purposes.

As in so many state-created danger cases, the harm inflicted on the plaintiffs is tragic. However, the violence that occurred was unquestionably committed by private actors, and the plaintiffs have neither stated a plausible claim that the school district nor advanced sufficient factual support for the claim that the school officials played a part in creating or greatly increasing the

danger that the plaintiffs would be victims of gun violence as they left school. Absent sufficient allegations and evidence of such an affirmative act, the plaintiffs due process claims must fail. It follows that we need not examine whether the plaintiffs faced a "special danger" or whether there was requisite culpability on the part of the school system or school officials. The district court's disposition of both state-created danger theories must be upheld.

## 2. Public Nuisance

The plaintiffs argue that the long history of gang violence in and around Henry Ford constituted a public nuisance, and the actions of the school officials on the day of the shooting were a proximate cause of the plaintiffs' injuries. They challenge the district court's summary judgment ruling in the school officials' favor. Gang violence is undoubtedly a public nuisance in some sense, but the elements of the state-law tort of public nuisance cannot be satisfied here.

Michigan state law defines a public nuisance as follows:

> A public nuisance is an unreasonable interference with a common right enjoyed by the general public. The term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public. . . .

> In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition. A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise.

*Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 300-01 (Mich. Ct. App. 1995) (citations omitted).

The district court's dismissal of the public nuisance claim against the school system was proper because the school system is immune from tort liability. Mich. Comp. Laws § 691.1407(1); *see also Nelepa v. Plymouth-Canton Cmty. Sch. Dist.*, 525 N.W.2d 897, 901 (Mich. Ct. App. 1994). ("[A] school district is a level of government of the type contemplated by the Legislature in the statute regarding absolute governmental immunity.")

Similarly, school officials acting within the scope of their authority are immune from tort liability provided their "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)(c); *see also Kendricks v. Rehfield*, 716 N.W.2d 623, 625 (Mich. Ct. App. 2006) ("An employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury."). Nuisance is a tort that falls "within the scope of statutory governmental immunity." *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 227 (Mich. 2002) (citation omitted).

Establishing proximate cause is a high bar. The Michigan Supreme Court has made clear that, under the immunity statute, "[t]he Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause. The phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000).

The actions of the school officials do not reach this high bar. Even viewing the evidence in the light most favorable to the plaintiffs, it does not justify a reasonable inference that the school officials' failure, when they broke up the right, to take some additional disciplinary or preventative measure, constitutional such gross negligence as to be the proximate cause of the plaintiffs' injuries. Morton and the other shooters were the proximate cause of the plaintiffs' injuries. Hence, the

defendant school officials are immune from tort liability under Michigan law and were properly granted summary judgment on the public nuisance claim.

## III.

The judgment of the district court is **affirmed**.