RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0247p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

JONATHAN JONES,

*Plaintiff-Appellant,*

*v.*

No. 16-3259

HAMILTON COUNTY SHERIFF,

*Defendant-Appellee.*

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00236—Michael R. Barrett, District Judge.

Argued: September 28, 2016

Decided and Filed: September 30, 2016

Before: ROGERS, SUTTON, and COOK, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Robert B. Newman, NEWMAN & MEEKS CO., L.P.A., Cincinnati, Ohio, for Appellant. Pamela J. Sears, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Robert B. Newman, NEWMAN & MEEKS CO., L.P.A., Cincinnati, Ohio, Stephen R. Felson, Cincinnati, Ohio, for Appellant. Pamela J. Sears, Michael J. Friedman, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

SUTTON, Circuit Judge. The Hamilton County Sheriff transported Jonathan Jones to the Ohio Department of Rehabilitation and Corrections one day after the sheriff received the judgment entry sentencing Jones. Because Jones fulfilled his sentence with the time he had

1

already served, the Department gave him a certificate of expiration of sentence and sent him on his way.  Jones responded to this seemingly unnecessary trip by suing the sheriff for money damages in federal court.  Although Ohio generally treats its sheriffs as county policymakers, Ohio law required the Hamilton County Sheriff to transport Jones to the Department.  The sheriff, acting as an arm of the State in this respect, thus enjoys sovereign immunity from suit in federal court.  We affirm.

Jones was arrested on July 8, 2013, and indicted on July 16, 2013, for felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2).  He entered a guilty plea to a reduced charge on February 3, 2015.  At his sentencing hearing that same day, the judge determined that the sentence "to be served is one year, six months in the Ohio Department of Corrections."  R. 13 at 28.  The judge determined that Jones could receive "credit for time served in the amount of 560 days" but also indicated that Jones "may be supervised for up to three years after [he] leave[s] prison if the parole board determines it is necessary."  *Id.* at 28–29.  The parole board would make that determination "[b]efore [Jones is] released," and the sheriff's office would need to "process him."  *Id.* at 29, 31.  The judge predicted that Jones "will never be transported" and "guess[ed]" that he would be released either that day, February 3, or early the next day, February 4, "[d]epending on how long the processing takes."  *Id.* at 31.

Those "[e]xpectations," as sometimes happens, turned out to be "a bucket of smoke." Wendell Berry, *Hannah Coulter* 139 (2005).  The sheriff did not release Jones on February 3. And he did not release him on February 4.  Jones' counsel contacted the sheriff in an attempt to secure his client's release.  But counsel's efforts proved fruitless in the absence of a sentencing transcript, judgment entry, or any other documentation to prove Jones merited immediate release. The court finally filed the judgment entry on February 5.  The sheriff's daily transport of inmates to the Department's reception center leaves between 6:30 a.m. and 7 a.m., well before the judgment entry occurred on February 5.  The sheriff thus processed Jones and transported him to the Department on February 6.  The Department applied the 560-day credit, gave Jones the official certificate of expiration of sentence, and released him that day.

Jones sued Hamilton County Sheriff Jim Neil in his official capacity for damages, alleging that the sheriff (1) had violated Jones' "rights under the Fourteenth Amendment to the

United States Constitution," and (2) had falsely imprisoned him "under the laws of the State of Ohio" by not releasing him immediately after the sentencing hearing concluded on February 3. R. 1 at 2–3. To be clear, Jones did not challenge the sheriff's decision *to wait* until the morning after receiving the judgment entry before sending him roughly one hundred miles to the Department with the other convicts. He instead challenged the sheriff's more fundamental decision *to transport* him to the Department at any time after the sentencing hearing, the purported "policy of sending all sentenced persons to the Ohio Department of Rehabilitation and Corrections." R. 1 at 2–3. Jones moved for partial summary judgment. The sheriff moved to dismiss the complaint or in the alternative for summary judgment. The district court denied Jones' motion for partial summary judgment and dismissed the claims against the sheriff. Jones appeals.

The first—and insurmountable—hurdle for Jones is the sheriff's claim of sovereign immunity. *See* Fed. R. Civ. P. 12(b)(1). "The States' sovereign immunity . . . shields the States from private lawsuits absent their consent or permissible abrogation by Congress. . . . Damages actions against state officers in their official capacities count as lawsuits against the State." *Crabbs v. Scott*, 786 F.3d 426, 428–29 (6th Cir. 2015); *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Counties and their officers, it is true, normally do not "share the States' sovereign immunity." *Crabbs*, 786 F.3d at 429; *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Because counties lack inherent sovereign immunity, so do Ohio county sheriffs, who "generally are treated as county policymakers." *Crabbs*, 786 F.3d at 430. "Ohio law classifies county sheriffs as 'county officials' and 'employees,'" and "[t]he voters of each county elect their own sheriff." *Id.* at 429 (citing Ohio Rev. Code §§ 301.28(A)(3), 311.01(A), 2744.01). But a sheriff may still come within the umbrella of the State's sovereign immunity "if state law *required* him to take the actions he took." *Id.* at 430; *see Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999). We therefore look to Ohio law to determine whether "sheriffs, when executing their . . . duties" under Ohio Rev. Code § 2949.12 "represent the State" of Ohio. *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 793 (1997).

That is just what happened here.  Ohio law required the sheriff to transport Jones to the Department and prohibited him from releasing Jones on February 3 without the Department's permission.  Ohio Rev. Code § 2949.12 mandates that "a convicted felon who is sentenced to serve a term of imprisonment in a state correctional institution shall be conveyed, within five days after sentencing, . . . by the sheriff of the county in which the conviction was had to the facility that is designated by the department of rehabilitation and correction for the reception of convicted felons."  The Ohio Supreme Court has "consistently interpreted the word 'shall' in a legislative enactment to make mandatory the provision in which it is contained, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning."  *State ex rel. Stewart v. Russo,* 49 N.E.3d 1272, 1275 (Ohio 2016) (quotation omitted).  With no such qualification of "shall" in § 2949.12, the statute requires sheriffs to transport convicted felons to the Department.

The mandatory transport of convicted felons to the Department has some method to it.  As Jones acknowledges, "almost all over-detention cases involve prisoners who believe their release dates have been miscalculated."  Appellant's Br. 22.  Section 2949.12 tries to solve that problem.  With "copies of the sentence and indictment" in hand, the Department can ensure that release dates are correctly calculated.  Ohio Rev. Code § 2949.12.  Nor can sheriffs ignore prisoners' complaints or drag their heels in investigating those complaints.  They must convey each prisoner to the Department "within five days after sentencing, excluding Saturdays, Sundays, and legal holidays."  *Id.*  Further, § 2949.12 allows the parole board to apply any post-release sanctions before release from imprisonment, *see id.* § 2967.28(D)(1), and the Department to acquire a DNA specimen "during the intake process," *id.* § 2901.07(B)(1)(a).

As the judgment entry specifies, the Hamilton County Court of Common Pleas found Jones guilty of "felonious assault" and stated that he "is sentenced to be imprisoned" for "one [] year and six [] months in the Department of Corrections."  R. 32-9 at 88.  The Hamilton County Sheriff thus had a State-mandated obligation to convey Jones to the Department within five days of judgment entry on February 5.  *See* Ohio Crim. R. 32(C).  And the sheriff satisfied that responsibility within one day.

Although the state court said on February 3 that Jones was due a time credit longer than his sentence, § 2949.12 still applied to Jones. It is the judgment, not the judge's oral statement, that imposes the sentence and binds the inmate. And the judgment became "effective only when entered on the journal by the clerk." Ohio R. Crim. P. 32(C). Even if the judge had authority under Ohio law to apply the credit for time served, the earliest Jones could have used the credit was February 5, when the clerk entered the judgment. On February 3, Jones had not "served his lawful sentence" under Ohio law and was not "entitled to be released" as he claims. R. 1 at 2.

In addition, the Department, not the court, has the authority under Ohio law to apply time credits. Ohio law requires the state court to "[d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined . . . and by which the department of rehabilitation and correction must reduce the stated prison term." Ohio Rev. Code § 2929.19(B)(2)(g)(i). The judge accordingly determined the length of the time credit. But Ohio law empowers the Department to apply that reduction. Ohio Rev. Code § 2967.191. Before the sheriff transported Jones to the Department on February 6, the Department had not reduced Jones' sentence, and he was still "sentenced to serve a term of imprisonment in a state correctional institution." *Id.* § 2949.12. The sheriff had no discretion to release Jones on February 3 or on February 5 before conveying him to the Department. In transporting Jones to the Department, the sheriff did not follow a discretionary policy but a statutory obligation "he was bound to enforce." *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 693 (6th Cir. 2002). Acting as an arm of the State, the sheriff is entitled to sovereign immunity for the federal claim under 42 U.S.C. § 1983 and the false imprisonment claim under Ohio law.

Section 2949.12, it is true, allows immediate release if "execution of sentence is suspended or the convicted felon has less than thirty days to serve in prison and the department of rehabilitation and correction, the county sheriff, and the court agree." But "there is no evidence presented that . . . there was any agreement between [the Department], the [s]heriff, and the judge as to the release of Jones." R. 44 at 7. Even if the sheriff wanted to release Jones on February 3, nothing in the statute requires the Department or the judge to agree to immediate release before entry of judgment or before the sheriff has transported the convicted felon and presented the judgment entry for the Department's inspection.

Last of all, Jones argues that, if we hold the sheriff "to have been acting as an arm of the State of Ohio," then the sheriff "must also be subject to the same Ohio waiver of immunity that applies to other State entities under Chapter 2743" for the state law claim. Appellant's Br. 25. Ohio provides statutory immunity for political subdivisions, such as counties. *See* Ohio Rev. Code § 2744.02. But even assuming that this immunity does not apply when county employees act as an arm of the State, Ohio has not waived sovereign immunity for state law damages claims against the State in *federal* court. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). Ohio Rev. Code § 2743.02(A)(1) states: "The state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims created in this chapter." Rather than constituting a waiver of sovereign immunity in federal court, § 2743.02(A)(1) confirms that Ohio has not consented to state law damages actions against the State of Ohio, including actions against state officials acting in their official capacity, outside of its own courts. "Accordingly, the district court properly dismissed the state law claim[]" as well as the § 1983 claim. *McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

For these reasons, we affirm.