**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0519n.06

Nos. 17-3800/3834

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: OHIO EXECUTION PROTOCOL LITIGATION | ) ) ) ) ) ) | **FILED** Sep 07, 2017 DEBORAH S. HUNT, Clerk |
| ———————————————- | ) | |
| GARY OTTE; RAYMOND TIBBETTS; and ALVA CAMPBELL, JR., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| JOHN KASICH, Governor, State of Ohio; GARY C. MOHR, Director, ODRC; DONALD MORGAN, Warden, Southern Ohio Correctional Facility; ANONYMOUS EXECUTION TEAM MEMBERS 1-50, c/o Southern Ohio Correctional Facility; WARDEN, FRANKLIN MEDICAL CENTER; STEPHEN GRAY, Chief Counsel, ODRC; CHARLOTTE JENKINS; WARDEN, OHIO STATE PENITENTIARY; RICHARD THEODORE, Pharmacist, c/o ODRC; EDWIN C. VOORHIES, JR., Managing Director of Operations, ODRC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before: COLE, Chief Judge; SUTTON and GRIFFIN, Circuit Judges.

PER CURIAM.

*Introduction.* In this § 1983 action, three death-penalty inmates challenged Ohio's execution protocol under the Eighth and Fourteenth Amendments and added a pendent state-law claim alleging that the five defendants (all involved in implementing Ohio's capital-punishment system) will violate the Ohio Corrupt Practices Act by using controlled substances without a

prescription in the next execution. This court, sitting en banc, recently rejected the federal constitutional challenge to the protocol. *See In re: Ohio Execution Protocol*, 860 F.3d 881 (6th Cir.) (en banc), *cert denied*, 137 S. Ct. 2238 (2017).

At issue today is the state law claim. The district court did not reach the merits of this claim and dismissed it for lack of jurisdiction and failure to state a claim, leaving the plaintiffs free to pursue relief under state law in the state courts. We agree and affirm the dismissal of the claim.

The first reason for not exercising jurisdiction over this state law claim is sovereign immunity. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the [s]tate that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). That is today's claim. Plaintiffs argue that individuals employed or hired by the state will violate state law in carrying out core responsibilities on behalf of the state, namely the implementation of Ohio's system of capital punishment. In word and deed, *Pennhurst* bars the claim, as the district court correctly held.

Nor do any of the exceptions to the states' sovereign immunity apply here. The states, like the federal government, are free to set their own terms for suing and being sued. To preserve the supremacy of federal law, however, the United States Supreme Court has created two pertinent exceptions to these principles (and without regard to any waiver of immunity) for cases involving state action, most notably by allowing injunction actions against state officials, *see Ex Parte Young*, 209 U.S. 123 (1908), and by allowing money-damages against state officials for violating clearly established principles of federal law, *see Monroe v. Pape*, 365 U.S. 167, 172 (1961); *cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But these exceptions to the normal rules—that the states and federal government may set their own terms for being sued—do not apply to a *federal court* action to vindicate *state law*. The plaintiffs cite no waiver of Ohio's immunity from suit that would allow this action in federal court, and Supreme Court precedents do not create one.

The plaintiffs' claim for money damages comes with its own limitation—that any such claim must first proceed through the state court of claims. The plaintiffs have filed no such action. All of this requires the dismissal of the case.

Even if all of this were not true, 28 U.S.C. § 1367 does not *require* federal courts to hear pendent state law claims. For many of the reasons just given and many others elaborated below, this is an appropriate setting for dismissing the state law claim (without prejudice) and permitting the plaintiffs to refile it in state court.

*Background.* Plaintiffs Gary Otte, Raymond Tibbetts, and Alva Campbell, Jr., are Ohio death-penalty inmates. Otte has an execution date set for September 13, 2017. Campbell has an execution date of November 15, 2017. And Tibbetts's execution is scheduled for February 13, 2018.

These appeals are the latest in a series of challenges to Ohio's lethal injection protocol. Most recently, this court rejected an Eighth Amendment challenge to the current version of the protocol. *See In re: Ohio Execution Protocol*, 860 F.3d 881. In 2016, Otte and Tibbetts each filed Fourth Amended Complaints and a Joint Supplement to the Fourth Amended Complaints, which raised a claim under the Ohio Corrupt Practices Act, the Forty-Ninth Cause of Action. The district court subsequently dismissed a number of claims from these complaints, including this state law claim, for lack of subject matter jurisdiction and failure to state a claim. *In re: Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017). Otte and Tibbetts moved the court to reconsider its dismissal of the state law claim, but the court denied their motion. *In re: Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2017 WL 3027956 (S.D. Ohio July 17, 2017). Otte and Tibbetts moved the court to reconsider its decision a second time. The court again denied their motion to reconsider but granted their request to enter its final judgment regarding the state law claim, thereby allowing their current appeal (No. 17-3800). *In re: Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2017 WL 3167650 (S.D. Ohio July 25, 2017).

In a separate Fourth Amended Complaint, Campbell raised a similar state law claim as his Forty-Sixth Cause of Action. Relying on the same reasoning that formed the basis of its dismissal of Otte and Tibbetts's state law claims, the district court dismissed Campbell's similar claim. *In re: Ohio Execution Protocol Litigation*, No. 2:11-cv-1016 (S.D. Ohio Aug. 2, 2017). As with Otte and Tibbetts's case, the court entered final judgment for this claim, and Campbell has filed a timely appeal (No. 17-3834). We consolidated the appeals.

*Discussion.* Seeking monetary, declaratory, and injunctive relief, the plaintiffs sued Richard Theodore (a pharmacist who will release the lethal injection drugs to the Execution Team) and Execution Team Members 17, 21, 31, and 32 (who are paramedics or EMTs) in their individual capacities. The plaintiffs alleged that the defendants' participation in their executions would violate the Ohio Corrupt Practices Act. The district court concluded that the plaintiffs' injunction and declaratory claims were barred by the Eleventh Amendment and that the money-damages claim had to be presented in the first instance to the Ohio Court of Claims.

The district court properly determined that the plaintiffs' claims for declaratory and injunctive relief were barred by the Eleventh Amendment. That Amendment prohibits suits naming the state or one of its agencies or departments as the defendant, regardless of the nature of the relief sought. *Pennhurst*, 465 U.S. at 100. This immunity from suit extends to state officials when the lawsuit is in fact against the state. *Will*, 491 U.S. at 71; *Pennhurst*, 465 U.S. at 101-02. Under *Ex Parte Young*, 209 U.S. 123 (1908), a federal court may issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974). But that exception does not extend to prospective injunctive or declaratory relief based on alleged violations of state law. As the Court observed in *Pennhurst*, 465 U.S. at 106:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of

federalism that underlie the Eleventh Amendment. We conclude that *Young* and
*Edelman* are inapplicable in a suit against state officials on the basis of state law.

*See also Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("[T]he states'
constitutional immunity from suit prohibits *all* state-law claims filed against a [s]tate in federal
court, whether those claims are monetary or injunctive in nature."); *Turker v. Ohio Dep't of
Rehab. & Corr.*, 157 F.3d 453, 456-57 (6th Cir. 1998) ("It is . . . well-established that a federal
court cannot entertain a lawsuit against state officials for violations of state law unless the state
has waived its immunity under the Eleventh Amendment.  Ohio has not waived that immunity."
(internal citations omitted)).  This conclusion applies even if, as in the present case, supplemental
jurisdiction otherwise exists.  *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d
429, 438 (6th Cir. 2000).  Because the plaintiffs sought to obtain injunctive and declaratory relief
based on the Ohio Corrupt Practices Act, a state law, the district court properly concluded that
sovereign immunity barred their claims.

The plaintiffs try to distinguish *Pennhurst* on the ground that they are suing the
defendants in their individual, not official, capacities.  But *Pennhurst* explained that, when
plaintiffs sue state officials for violations of state law, "relief sought nominally against an officer
is in fact against the sovereign if the decree would operate against the latter" and when "the state
is the real, substantial party in interest."  465 U.S. at 101 (citations omitted).  This is also the case
when the plaintiffs "claim that state officials violated state law in carrying out their official
responsibilities."  *Id.* at 121.  Sovereign immunity thus bars a plaintiff from using state law to
enjoin state officials from carrying out official responsibilities even when the officials are sued in
their individual capacities.  *Williams v. Kentucky*, 24 F.3d 1526, 1531, 1543 (6th Cir. 1994).

The plaintiffs do not contend that the officials committed any wrong against the plaintiffs
independent of their implementation of state law.  Their requested relief as a practical matter
would prohibit the state from carrying out its execution procedures by prohibiting its employees
from administering the execution drugs.  Where, as here, "the relief sought . . . has an impact

directly on the [s]tate itself," the plaintiffs' lawsuit against the state officers should be treated as a suit against the state. *Pennhurst*, 465 U.S. at 117.

Under the plaintiffs' theory—that the Eleventh Amendment does not apply so long as plaintiffs sue state officials in their individual capacity—"the Eleventh Amendment would have force only in the rare case in which a plaintiff foolishly attempts to sue the [s]tate in its own name" or state officials in their "official" capacity. *Pennhurst*, 465 U.S. at 116. The plaintiffs' "exception . . . would swallow the general rule that a suit is against the [s]tate if the relief will run against it." *Id.* The Court rejected a similar end run in *Pennhurst*. *Id.*

The plaintiffs argue that *Pennhurst* distinguished between individual and official capacity suits. That is true but not helpful. *Pennhurst* "distinguished . . . cases seeking money damages against the individual officer in tort, and those seeking injunctive relief against the officer in his official capacity." 465 U.S. at 111 n.21. The latter "sought relief against the sovereign, while the former might not." *Id.* Whether one seeks relief against the officer in his official capacity (and hence the sovereign), the Court explained, "turns on whether the defendant state official was empowered to do what he did, *i.e.*, whether, . . . [the challenged action] was action within the scope of his authority." *Id.* at 112 n.22. The opinion shows that immunity turns on functional reality, not labels, and thus does not turn on whether the plaintiffs label their claim as an official-capacity or individual-capacity suit.

The plaintiffs demur. *Hafer v. Melo*, 502 U.S. 21 (1991), they say, explained that the phrase "'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26. But *Hafer* addressed whether officers sued in their individual capacities are "persons" subject to suit under § 1983. It did not mention *Pennhurst* or for that matter address when a state-law action against a state official is functionally an action against the state.

The plaintiffs claim that several circuit court cases lead to a different conclusion. But none is on point. Some deal with violations of federal law. *See Spruyette v. Walters*, 753 F.2d 498 511–14 (6th Cir. 1985); *Ying Jing Gang v. City of New York*, 996 F.2d 522, 529 (2d Cir.

1993).  Others deal with damages.  *See Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 532 (1st Cir. 2009); *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).  None of these cases holds that federal courts may enjoin state officials for violating state law while carrying out official state law duties.

The plaintiffs' separate request for monetary relief under state law does not fix these problems or otherwise allow the action to proceed.  When faced with a claim of immunity to a supplemental state claim, a federal court must look to the appropriate state law to ascertain the nature of the immunity.  *Cullinan v. Abramson*, 128 F.3d 301, 312 (6th Cir. 1997).  And Ohio has not consented to state law actions against the State of Ohio and state officials outside of its own courts.  *See Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016).  Ohio Rev. Code § 9.86 provides that no "employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the . . . employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Revised Code § 2743.02(F), in turn, establishes that lawsuits alleging damages against state employees "shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86."  Thus, "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86."  *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

The plaintiffs counter that some of the defendants are not entitled to immunity under Ohio law because they do not qualify as state employees.  While the plaintiffs acknowledge that defendants Theodore and Execution Team Member 17 are state employees, they maintain that Team Members 21, 31, and 32 do not have the same status.  Not so.  Under Ohio Revised Code § 109.36(A)(1)(b), a "person that, at the time a cause of action against the person . . . arises, is

rendering medical . . . services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state" is an "employee."  The defendants qualify as "employees" under § 109.36(A)(1)(b) because they render medical services.  Section 109.36 does not define the term "medical," but the services that the defendants provide as EMTs and paramedics qualify as "medical" under any reasonable sense of the term.  The defendants, for example, are responsible for "the establishing and maintenance of an intravenous line and the administration of drugs through that line."  And Ohio law considers the administration of drugs and intravenous fluids "emergency medical services."  *See* Ohio Rev. Code. § 4765.39.

The plaintiffs also invoke the general proposition that a state cannot hinder a federal court's jurisdiction over a cause of action that otherwise restricts jurisdiction to a specialized state court.  *See Marshall v. Marshall*, 547 U.S. 293, 314 (2006); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 798 (6th Cir. 2012); *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006); *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006).  But none of these cases involved a state's invocation of its sovereign immunity.  Ohio has not attempted (by statute, court decision, or otherwise) to restrict the ability of federal courts to hear certain types of cases.  It has just set forth the terms for its limited waiver of immunity for actions by its employees.

Last but not least, we are free to affirm the district court's decision on alternative grounds.  Much of what we have said so far explains why it makes little sense for the federal courts to entertain this state law claim concerning a core matter of state law.  Section 1367 permits federal courts to entertain jurisdiction over pendent state law claims.  But it does not require them to do so, least of all after the core federal claim already has been rejected on the merits.  *See* 28 U.S.C. § 1367(c).  Even if sovereign immunity and Ohio law did not bar the plaintiffs' claim, we would decline to exercise supplemental jurisdiction over the claim.  *See Doe v. Sundquist*, 106 F. 3d 702, 708 (6th Cir. 1997).

For these reasons, we affirm the dismissal of the plaintiffs' state law claim without prejudice, permitting them to refile the claim in state court.

SUTTON, Circuit Judge, concurring. I concur in full in the per curiam opinion, but write separately to make one point.

*Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994), seems to say that federal courts may order state officials to conform to state law through a lawsuit for money damages if the lawsuit names the state employees in their individual capacities and without regard to whether the State has consented to the lawsuit. I say "seems" because it is not clear from the rest of *Williams* that the plaintiffs sought money damages, as opposed to injunctive relief, under state law. I am skeptical about this statement in *Williams*, whether *dictum* or not, and skeptical of the statements of a few other courts of appeals to the same effect, *see, e.g., Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009); *Wilson v. UT Health Center*, 973 F.2d 1263 (5th Cir. 1992); *Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992).

A core feature of sovereignty is the state's authority to decide when and where it can be sued. *Alden v. Maine*, 527 U.S. 706, 713 (1999). Ohio has not consented to allow its employees to be sued in federal court for actions taken in the scope of their employment. We know that a claimant cannot evade that bar by seeking injunctive or declaratory relief against a state official acting within the scope of his authority, whether the action names the state employee in their individual or official capacity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

*Pennhurst*, it's true, did not address today's setting: an individual capacity money damages action. But I see no reason why the rationale of the decision does not apply equally, if not more forcefully, to a state law money damages action against a state employee. The essential insight of the decision is that federal courts do not have authority to command the States to follow their own laws. *Id.* at 100. "When a suit is brought only against state officials," it says,

we apply a functional test to see whether "the state is the real, substantial party in interest." *Id.* at 101 (quotation omitted). That functional test covers today's case. The plaintiffs have not sued these individuals for causing a car accident on their way to fetching a gallon of milk. They have sued them for actions taken under state law, which is why the Ohio Attorney General represents them. When it comes to the comity and sovereignty considerations of *Pennhurst*, the State surely is the real party in interest when the plaintiff sues the state official for actions taken within the scope of his authority. *Id.* at 121.

When a federal court enjoins a state official from doing his job, *Pennhurst* says that the State is the real party in interest because the lawsuit will prevent the state employees from performing their official duties. The same principle applies when a federal court tells a state official that he owes *damages* under state law for doing his job. Doctrines that turn on "individual capacity" and "official capacity" make sense in the context of actions designed to require the States and their employees to comply with federal law. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985); *Hafer v. Melo*, 502 U.S. 20, 30 (1991). But they make far less sense, indeed little sense, in the context of federal-court actions designed to bring States to heel under their *own* law.

A state official who violates the United States Constitution, *Ex parte Young* says, is not acting on behalf of the State because States cannot authorize unconstitutional action. 209 U.S. 123, 160 (1908). For that reason, an official who acts unconstitutionally is "stripped of his official or representative character and is subjected in *his person* to the consequences of his individual conduct." *Id.* (emphasis added). But *Pennhurst* explains that the "entire basis" for the *Ex parte Young* fiction "disappears" when a plaintiff alleges that a state official has violated *state* (rather than federal) law. 465 U.S. at 106. "Entire basis" exactly. That's because the *Ex parte*

*Young* fiction serves only to "vindicate *federal* rights and hold state officials responsible to 'the supreme authority of the United States.'" *Id.* at 105 (emphasis added). In marked contrast, the "need to reconcile competing [federal and state] interests is wholly absent . . . when a plaintiff alleges that a state official has violated *state* law." *Id.* at 106.

Accordingly, when a plaintiff alleges that a state official has violated state law, there's no reason to assume (as we do when a plaintiff alleges that a state official has violated federal law) that an "individual capacity" suit is one against the official in his person rather than one against the State. As in *Pennhurst*, then, so too here: When a state employee acts within the scope of his authority, a state-law suit against him in federal court is functionally a lawsuit against the State for sovereign immunity purposes, regardless of whether the suit seeks damages or injunctive relief.

This straightforward approach leads to a straightforward rule and exception. The rule: If the plaintiff sues a state official under state law in federal court for actions taken within the scope of his authority, sovereign immunity bars the lawsuit regardless of whether the action seeks monetary or injunctive or declaratory relief. The exception: If the plaintiff sues the official for actions beyond the official's authority, the State's sovereign immunity does not apply. The rule, not the exception, applies here.