PER CURIAM.

Introduction. In this § 1983 action, three death-penalty inmates challenged Ohio’s execution protocol under the Eighth and Fourteenth Amendments and added a pendent state-law claim alleging that the *781 five defendants (all involved in implementing Ohio’s capital-punishment system) will violate the Ohio Corrupt Practices Act by using controlled substances without a prescription in the next execution. This court, sitting en banc, recently rejected the federal constitutional challenge to the protocol. See In re: Ohio Execution Protocol, 860 F.3d 881 (6th Cir.) (en banc), cert denied, — U.S. -, 137 S.Ct. 2238, 198 L.Ed.2d 761 (2017).
At issue today is the state law claim. The district court did not reach the merits of this claim and dismissed it for lack of jurisdiction and failure to state a claim, leaving the plaintiffs free to pursue relief under state law in the state courts. We agree and affirm the dismissal of the claim.
The first reason for not exercising jurisdiction over this state law claim is sovereign immunity. “[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the [sjtate that is protected by the Eleventh Amendment.” Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). That is today’s claim. Plaintiffs argue that individuals employed or hired by the state will violate state law in carrying out core responsibilities on behalf of the state, namely the implementation of Ohio’s system of capital punishment. In word and deed, Pennhurst bars the claim, as the district court correctly held.
Nor do any of the exceptions to the states’ sovereign immunity apply here. The states, like the federal government, are free to set their own terms for suing and being sued. To preserve the supremacy of federal law, however, the United States Supreme Court has created two pertinent exceptions to these principles (and without regard to any waiver of immunity) for cases involving state action, most notably by allowing injunction actions against state officials, see Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and by allowing money-damages against state officials for violating clearly established principles of federal law, see Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); cf. Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). But these exceptions to the normal rules — that the states and federal government may set their own terms for being sued — do not apply to a federal court action to vindicate state law. The plaintiffs cite no waiver of Ohio’s immunity from suit that would allow this action in federal court, and Supreme Court precedents do not create one.
The plaintiffs’ claim for money damages comes with its own limitation — that any such claim must first proceed through the state court of claims. The plaintiffs have filed no such action. All of this requires the dismissal of the case.
Even if all of this were not true, 28 U.S.C. § 1367 does not require federal courts to hear pendent state law claims. For many of the reasons just given and many others elaborated below, this is an appropriate setting for dismissing the state law claim (without' prejudice) and permitting the plaintiffs to refile it in state court.

Background. Plaintiffs Gary Otte, Raymond Tibbetts, and Alva Campbell, Jr., are Ohio death-penalty inmates. Otte. has an execution date set for September 13, 2017. Campbell has an execution date of November 15, 2017. And Tibbetts’s execution is scheduled for February 13,2018.
These appeals are the latest in a series of challenges to Ohio’s lethal injection protocol. Most recently, this court rejected an Eighth Amendment challenge to the current version of the protocol. See In re: 
*782
Ohio Execution Protocol, 860 F.3d 881. In 2016, Otte and Tibbetts each filed Fourth Amended Complaints and a Joint Supplement to the Fourth Amended Complaints, which raised a claim under the Ohio Corrupt Practices Act, the Forty-Ninth Cause of Action. The district court subsequently dismissed a number of claims from these complaints, including this state law claim, for lack of subject matter jurisdiction and failure to state a claim. In re: Ohio Execution Protocol Litigation, No. 2:11-cv-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017). Otte and Tibbetts moved the court to reconsider its dismissal of the state law claim, but the court denied their motion. In re: Ohio Execution Protocol Litigation, No. 2:11-cv-1016, 2017 WL 3027956 (S.D. Ohio July 17, 2017). Otte and Tibbetts moved the court to reconsider its decision a second time. The court again denied their motion to reconsider but granted their request to enter its final judgment regarding the state law claim, thereby allowing their current appeal (No. 17-3800). In re: Ohio Execution Protocol Litigation, No. 2:11-cv-1016, 2017 WL 3167650 (S.D. Ohio July 25, 2017).
In a separate Fourth Amended Complaint, Campbell raised a similar state law claim as his Forty-Sixth Cause of Action. Relying on the same reasoning that formed the basis of its dismissal of Otte and Tibbetts’s state law claims, the district court dismissed Campbell’s similar claim. In re: Ohio Execution Protocol Litigation, No. 2:11-cv-1016 (S.D. Ohio Aug. 2, 2017). As with Otte and Tibbetts’s case, the court entered final judgment for this claim, and Campbell has filed a timely appeal (No. 17-3834). We consolidated the appeals.

Discussion. Seeking monetary, declaratory, and injunctive relief, the plaintiffs sued Richard Theodore (a pharmacist who will release the lethal injection drugs to the Execution Team) and Execution Team Members 17, 21, 31, and 32 (who are paramedics or EMTs) in their individual capacities. The plaintiffs alleged that the defendants’ participation in their executions would violate the Ohio Corrupt Practices Act. The district court concluded that the plaintiffs’ injunction and declaratory claims were barred by the Eleventh Amendment and that the money-damages claim had to be presented in the first instance to the Ohio Court of Claims.
The district court properly determined that the plaintiffs’ claims for declaratory and injunctive relief were barred by the Eleventh Amendment. That Amendment prohibits suits naming the state or one of its agencies or departments as the defendant, regardless of the nature of the relief sought. Pennhurst, 465 U.S. at 100, 104 S.Ct. 900. This immunity from suit extends to state officials when the lawsuit is in fact against the state. Will, 491 U.S. at 71, 109 S.Ct. 2304; Pennhurst, 465 U.S. at 101-02, 104 S.Ct. 900. Under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court may issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. See Edelman v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). But that exception does not extend to prospective injunctive or declaratory relief based on alleged violations of state law. As the Court observed in Pennhurst, 465 U.S. at 106, 104 S.Ct. 900:
A federal court’s grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the princi- *783 pies of federalism that underlie the Eleventh Amendment. We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.

See also Ernst v. Rising, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) (“[Tjhe states’ constitutional immunity from suit prohibits all state-law claims filed against a [s]tate in federal court, whether those claims are monetary or injunctive in nature.”); Turker v. Ohio Dep’t of Rehab. & Corr., 157 F.3d 453, 456-57 (6th Cir. 1998) (“It is ... well-established that a federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment. Ohio has not waived that immunity.” (internal citations omitted)). This conclusion applies even if, as in the present case, supplemental jurisdiction otherwise exists. McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery, 226 F.3d 429, 438 (6th Cir. 2000). Because the plaintiffs sought to obtain injunctive and declaratory relief based on the Ohio Corrupt Practices Act, a state law, the district court properly concluded that sovereign immunity barred their claims.
The plaintiffs try to distinguish Penn-hurst on the ground that they are suing the defendants in their individual, not official, capacities. But Pennhurst explained that, when plaintiffs sue state officials for violations of state law, “relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter” and when “the state is the real, substantial party in interest.” 465 U.S. at 101, 104 S.Ct. 900 (citations omitted). This is also the case when the plaintiffs “claim that state officials violated state law in carrying out their official responsibilities.” Id. at 121, 104 S.Ct. 900. Sovereign immunity thus bars a plaintiff from using state law to enjoin state officials from carrying out official responsibilities even when the officials are sued in their individual capacities. Williams v. Kentucky, 24 F.3d 1526, 1531, 1543 (6th Cir. 1994).
The plaintiffs do not contend that the officials committed any wrong against the plaintiffs independent of their implementation of state law. Their requested relief as a practical matter would prohibit the state from carrying out its execution procedures by prohibiting its employees from administering the execution drugs. Where, as here, “the relief sought ... has an impact directly on the [sjtate itself,” the plaintiffs’ lawsuit against the state officers should be treated as a suit against the state. Pennhurst, 465 U.S. at 117, 104 S.Ct. 900.
Under the plaintiffs’ theory — that the Eleventh Amendment does not apply so long as plaintiffs sue state officials in their individual capacity — “the Eleventh Amendment would have force only in the rare case in which a plaintiff foolishly attempts to sue the [sjtate in its own name” or state officials in their “official” capacity. Pennhurst, 465 U.S. at 116, 104 S.Ct. 900. The plaintiffs’ “exception ... would swallow the general rule that a suit is against the [sjtate if the relief will run against it.” Id. The Court rejected a similar end run in Pennhurst. Id.

The plaintiffs argue that Pennhurst distinguished between individual and official capacity suits. That is true but not helpful. Pennhurst “distinguished ... cases seeking money damages against the individual officer in tort, and those seeking injunctive relief against the officer in his official capacity.” 465 U.S. at 111 n.21, 104 S.Ct. 900. The latter “sought relief against the sovereign, while the former might not.” Id. Whether' one seeks relief against the officer in his official capacity (and hence the sovereign), the Court explained, “turns on whether the defendant state official was *784 empowered to do what he did, i.e., whether, ,,. [the challenged action] was action within the scope of his authority.” Id. at 112 n.22, 104 S.Ct. 900. The opinion shows that immunity turns on functional reality, not labels, and thus does not turn on whether the plaintiffs label their claim as an official-capacity or individual-capacity suit.
The plaintiffs demur. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), they say, explained that the phrase “ ‘acting in their official capacities’ is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.” Id. at 26, 112 S.Ct. 358, But Hafer addressed whether officers sued in their individual capacities are “persons” subject to suit under § 1983. It did not mention Pennhurst or for that matter address when a state-law action against a state official is functionally an action against the state.
The plaintiffs claim that several- circuit court cases lead to a different conclusion. But none is on point. Some deal with violations of federal law. See Spruytte v. Walters, 753 F.2d 498, 511-14 (6th Cir. 1985); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Others deal with damages. See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 532 (1st Cir. 2009); Pena v. Gardner, 976 F.2d 469, 473 (9th Cir. 1992). None of these cases holds that federal courts may enjoin state officials for violating state law while carrying out official state law duties.
The plaintiffs’ separate request for monetary relief under state law does not fix these problems or otherwise allow the action to proceed. When faced with a claim of immunity to a supplemental state claim, a federal court must look to the appropriate state law to ascertain the nature of the immunity. Cullinan v. Abramson, 128 F.3d 301, 312 (6th Cir. 1997). And Ohio has not consented to state law actions against the State of Ohio and state officials outside of its own courts. See Jones v. Hamilton Cty. Sheriff, 838 F.3d 782, 786 (6th Cir. 2016). Ohio Rev. Code § 9.86 provides that no “employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the ... employee’s actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.” Ohio Revised Code § 2743.02(F), in turn, establishes that lawsuits alleging damages against state employees “shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86.” Thus, “Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86.” Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir. 1989); see also McCormick v. Miami Univ., 693 F.3d 654, 665 (6th Cir. 2012).
The plaintiffs counter that some of the defendants are not entitled to immunity under Ohio law because they do not qualify as state employees. While the plaintiffs acknowledge that defendants Theodore and Execution Team Member 17 are state employees, they maintain that Team Members 21, 31, and 32 do not have the same status. Not so. Under Ohio Revised Code § 109.36(A)(1)(b), a “person that, at the time a cause of action against the person ... arises, is rendering medical .,. services pursuant to a personal ser *785 vices contract or purchased service contract with a department, agency, or institution of the state” is an “employee.” The defendants qualify as “employees” under § 109.36(A)(1)(b) because they render medical services. Section 109.36 does not define the term “medical,” but the services that the defendants provide as EMTs and paramedics qualify as “medical” under any reasonable sense of the term. The defendants, for example, are responsible for “the establishing and maintenance of an intravenous' line and the administration of drugs through that line.” And Ohio law considers the administration of drugs and intravenous fluids “emergency medical services.” See Ohio Rev. Code. § 4765.39.
The plaintiffs also invoke the general proposition that a state cannot hinder a federal court’s jurisdiction over a cause of action that otherwise restricts jurisdiction to a specialized state court. See Marshall v. Marshall, 547 U.S. 293, 314, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); Williams v. Duke Energy Int'l, Inc., 681 F.3d 788, 798 (6th Cir. 2012); Davet v. City of Cleveland, 456 F.3d 549, 554 (6th Cir. 2006); Superior Beverage Co. v. Schieffelin & Co., 448 F.3d 910, 917 (6th Cir. 2006). But none of these cases involved a state’s invocation of its sovereign immunity. Ohio has not attempted (by statute, court decision, or otherwise) to restrict the ability of federal courts to hear certain types of cases. It has just set forth the terms for its limited waiver of immunity for actions by its employees.
Last but not least, we are free to affirm the district court’s decision on alternative grounds. Much of what we have said so far explains why it makes little sense for ■ the federal courts to entertain this state law claim concerning a core matter of state law. Section 1367 permits federal courts to entertain jurisdiction over pendent state law claims. But it does not require them to do so, least of all after the core federal claim already has been rejected on the merits. See 28 U.S.C. § 1367(c). Even if sovereign immunity and Ohio law did not bar the plaintiffs’ claim, we would decline to exercise supplemental jurisdiction over the claim. See Doe v. Sundquist, 106 F.3d 702, 708 (6th Cir. 1997).
For these reasons, we affirm the dismissal of the plaintiffs’ state law claim without prejudice, permitting them to refile the claim in state court.