NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0263n.06

No. 20-3334

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DEAN KOCH, | ) | |
| Plaintiff-Appellant, | ) ) ) | **FILED** Jun 02, 2021 DEBORAH S. HUNT, Clerk |
| v. | ) ) | |
| STATE OF OHIO, Department of Natural Resources, Division of Wildlife; JAMES ZEHRINGER, Director Department of Natural Resources; SCOTT ZODY, Chief Department of Natural Resources, Division of Wildlife; RANDALL MEYER, Inspector General; GINO BARNA, Ohio Wildlife Officer, Erie County, Ohio; BRIAN BURY, Ohio Wildlife Officer, Erie County, Ohio; GARY MANLEY, Ohio Wildlife Officer, Erie County, Ohio, individually and in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |

**BEFORE: BATCHELDER, WHITE, and BUSH, Circuit Judges.**

HELENE N. WHITE, Circuit Judge. Plaintiff-Appellant Dean Koch appeals the dismissal of his suit against the Ohio Department of Natural Resources (ODNR), Ohio's inspector general, and five ODNR officials, alleging malicious prosecution and six other claims, as either barred by sovereign immunity or for failing to state a claim. We **AFFIRM**.

**I.**

For purposes of deciding this appeal, we accept as true the factual allegations in Koch's Complaint. Those allegations are as follows.

Koch is a commercial fisherman on Lake Erie and the owner of White's Landing Fisheries, Inc. in Sandusky, Ohio. From 1974 to 2008, Koch served as president of the Ohio Fish Producers Association, an organization representing commercial fisherman on Lake Erie.

Over the decades Koch served as president of the Ohio Fish Producers Association, Koch was at times critical of decisions made by the ODNR. For example, in 2000, Koch wrote to a member of the Ohio House of Representatives to criticize rules implemented by the ODNR that Koch believed would reduce the allowable catch of Ohio's commercial fisherman. In 2011, Koch wrote to then-Ohio Governor John Kasich criticizing ODNR for similar reasons, and circulated a letter opposing legislation that Koch believed would have ended commercial fishing in Ohio. Koch has also been quoted in at least one media publication criticizing the allocation of fishing resources away from Ohio's commercial fisherman.

Over the same time period, Koch had a difficult relationship with local fishing authorities. From 1974 to 1985, Koch was arrested fifteen times by Sandusky ODNR officers (Koch does not specify precisely what for). In 1988, Koch was arrested for illegally catching walleye. After the 1988 arrest, Koch filed an internal complaint against the Sandusky office. George Bauer, an ODNR officer from the Xenia office, investigated the complaint in June 1989. Koch alleges that Bauer found that Sandusky officials were "intentionally 'nickel and diming' Koch to keep him in court and cost him attorneys' fees and court costs," and that one of the defendants here, Gino Barna, destroyed his notes from the 1988 arrest.

In 1999, Koch's truck was seized by ODNR officers for another alleged illegal catch.

Koch alleges that in 2007, the State of Ohio and the ODNR proposed buying out commercial trap-net fisherman for approximately two cents on the dollar. Koch and the Ohio Fish Producers Association opposed the plan, which eventually failed. Koch alleges that the State and

the ODNR then offered to increase the quota of yellow perch available to Ohio's commercial fisherman if they removed Koch from the presidency of the Ohio Fish Producers Association. The Complaint does not specify who from the ODNR communicated this offer or how it was conveyed. Koch was subsequently voted out of the Fish Producers Association presidency.

In 2008, the Ohio General Assembly passed Senate Bill 77, which limited commercial perch fishing in the western basin of Lake Erie. The legislation also contained a provision mandating the permanent revocation of the commercial fishing licenses of anyone committing three misdemeanor fishing violations ("strikes") over a period of ten years. In 2008, Koch was cited 42 times for fishing violations (the Complaint does not specify what each citation was for). Koch alleges that "due to plea agreements offered by the Defendants," no other commercial fisherman charged with fishing misdemeanors was charged with a strikable offense. Koch was not offered a plea deal and was subsequently convicted of one count of not having proper monitoring equipment, a strikable offense.

In 2013, Koch received a second strike after he was convicted of taking undersized perch. In 2014, Defendants ODNR officers Bury and Abele seized fish from Koch's boat. The Complaint does not explain why, but incident reports in the record indicate that a routine ODNR inspection found Koch in possession of undersized perch. Koch complained about the seizure to Defendant Barna, an ODNR supervisor, disputing how the fish were measured and complaining that the officers were rude. After taking statements from Bury and Abele, Barna issued an investigative report finding no just cause to discipline Bury, without mentioning Abele. Koch then wrote to Defendant Zody, the ODNR chief at the time, to request that the investigation of Bury be reopened. Zody declined, explaining that Koch's complaints had not been substantiated by Barna. Koch in turn filed a complaint with Defendant Randall Meyer, Ohio's inspector general, alleging selective

arrest and prosecution. On July 15, 2016, Meyer wrote Koch "stating that the Intake Committee of the Inspector General's Office determined that there was not just cause for an investigation." R. 1, PID. 9 (Compl. ¶ 60); R. 10-2, PID. 136. Ten days later, Koch asked Meyer to reconsider his decision. Meyer replied on October 18, 2016, informing Koch that the Intake Committee again reviewed Koch's complaint and "found no wrong doing [*sic*] on the part of the agency[.]" R. 1, PID. 10 (Compl. ¶ 62); R. 10-2, PID. 139.

In August 2015, between the time Zody declined to reopen the investigation of Bury and the time Koch complained to Meyer about the 2014 incident, Koch was arrested by Bury and Manley for illegally fishing in Lake Erie's western basin. A conviction would cause Koch to lose his fishing license, since it would be his third misdemeanor fishing offense in ten years. Koch's Complaint does not provide further detail on the charge, other than to note that the prosecution allegedly should have considered "a documented collision with a freighter moving his nets" when deciding whether to charge him. R. 1, PID. 8 (Compl. ¶ 46). The district court took notice of the state court's filings in the matter, since the 2015 arrest serves as the basis for Koch's malicious prosecution claim. As detailed in *State v. Whites Landing Fisheries, LLC*, Koch was informed in April 2015 that there would be no yellow perch allocated for commercial fishing in the western basin of Lake Erie. 91 N.E.3d 315, 317 (Ohio Ct. App. 2017). In November 2015, Koch was charged with harvesting more than two hundred pounds of yellow perch from the western basin of Lake Erie. *Id.* at 317. Koch initially won dismissal at the trial level on the ground that the regulations defining the western basin's boundary lines were unconstitutionally vague. *Id.* at 318. The Ohio Court of Appeals reversed and reinstated the charges, *id.* at 322–23, and while this case was pending in the district court, Koch was tried and acquitted.

In June 2016, Koch's commercial fishing license was suspended for 60 days. Koch does not say why.

In October 2018, Koch filed this action against the ODNR, Inspector General Meyer, and five ODNR officers in both their official and personal capacities, alleging § 1983 claims for First Amendment retaliation, deprivation of due process rights, conspiracy, and two *Monell* claims.[1] The Complaint also alleges state claims for malicious prosecution and civil conspiracy.

On March 3, 2020, the district court granted the Defendants' motion to dismiss the Complaint. The district court held that all of Koch's claims against the ODNR were barred by sovereign immunity, that all state-law claims for injunctive and monetary relief against the individual defendants in their official capacities were barred by sovereign immunity, and that federal claims for monetary relief against the individual defendants in their official capacities were also barred by sovereign immunity. After the district court's sovereign immunity rulings, Koch was left with his state and federal claims for monetary relief against the individual defendants in their personal capacities and federal claims for injunctive relief against the individual defendants in their official capacities. The district court then dismissed what was left of Koch's complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.

This appeal followed.

## II.

All Koch's claims against the ODNR, all state-law claims against the individual defendants in their official capacities, and all federal claims for monetary relief against the

---

[1] The district court initially characterized Koch's failure to train and failure to supervise claims as state-law claims, but later analyzed them as *Monell* claims. On appeal, Koch describes the failure to train and supervise claims as federal claims, so that interpretation of the Complaint is adopted here. Appellant's Br. at 29.

individual defendants in their official capacities were dismissed based on sovereign immunity. On appeal, Koch does not argue that the district court misapplied the doctrine of sovereign immunity, but rather that the doctrine of sovereign immunity itself is unconstitutional. Reply Br. at 7.

The Supreme Court established the doctrine of sovereign immunity more than a century ago, and neither this court nor the district court can ignore binding Supreme Court precedent. *See Hans v. Louisiana*, 134 U.S. 1, 13 (1890) (defining parameters of Eleventh Amendment sovereign immunity). The ODNR is a state agency, and suits against officials in their official capacities are suits against the state. The district court correctly found that sovereign immunity bars Koch's claims against the ODNR, his state-law claims against the individual defendants in their official capacities, and all federal claims for monetary relief against the individual defendants in their official capacities. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (suits against officials in their official capacity are suits against the state, and sovereign immunity deprives federal courts of subject-matter jurisdiction over suits between a citizen and a state unless the state waives its immunity or Congress abrogates that sovereign immunity). The only exception to this rule is the *Ex parte Young* exception, which the district court correctly found is applicable to federal claims for injunctive relief against officers in their official capacities. *See id* at 1046–47.

Appellees argue that sovereign immunity also bars Koch's state-law claims for monetary relief against the individual officers in their personal capacities. Appellees' Br. at 17–21. There has been some disagreement in this Circuit as to whether sovereign immunity stretches so far. *Compare Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994) (sovereign immunity does not bar state-law claims for monetary relief against state officials sued in their personal capacities), *with In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 787 (6th Cir. 2017) (Sutton, J.,

concurring) (raising question as to whether *Williams*'s sovereign immunity holding was *dicta* and arguing that state-law claims against state officials for monetary relief should be barred by sovereign immunity if the state is the real-party-in-interest, regardless whether the official was sued in the official's personal or official capacity). But even if Appellees are right that the relevant language in *Williams* is dicta, an en banc panel of this court squarely rejected Appellees' argument in *Wilson v. Beebe*, 770 F.2d 578, 587–88 (6th Cir. 1985) (en banc), and this court is bound by that decision. Accordingly, sovereign immunity does not bar Koch's state-law claims for monetary relief against the individual officers in their personal capacities. Nevertheless, we dismiss for the reasons that follow.

**III.**

We review the district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6) de novo. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and look to see whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**A. Malicious Prosecution Claim**

Koch's first claim alleges he was maliciously prosecuted following his 2015 arrest for illegally fishing in the western basin of Lake Erie. The district court, after reviewing the facts of the underlying case, *State v. Whites Landing Fisheries, LLC*, 91 N.E.3d at 315, found that Koch could not state a claim for malicious prosecution because Koch did not allege any facts to show

7

the prosecution lacked probable cause to bring charges against him. On appeal, Koch's briefing is less than clear, but we interpret Koch to argue that his subsequent acquittal on the state charges (while this case was pending before the district court) meant that the prosecution lacked probable cause. Appellant's Br. at 23, 26–28.

Under Ohio law, a malicious prosecution claim requires: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675–76 (6th Cir. 2005) (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)). As detailed in *Whites Landing Fisheries, LLC*, Koch was charged with harvesting hundreds of pounds of perch from the western basin of Lake Erie—where the allowable commercial perch catch was zero. 91 N.E.3d at 317. Koch does not allege in the Complaint that Defendants Bury and Manley lacked probable cause to arrest him, nor does he deny in the Complaint or his briefing that he was caught harvesting hundreds of pounds of perch from the western basin of Lake Erie, in apparent clear violation of Ohio law. Instead, the Complaint alleges that a post-arrest investigation should have considered "a documented collision with a freighter moving his nets." R. 1, PID. 8 (Compl. ¶ 46). This may be so, but the Complaint does not explain how either Bury or Manley would have had any personal knowledge of a freighter collision with Koch's nets when they arrested him in 2015, and the State of Ohio, which ultimately brought and maintained charges against him, is no longer a defendant in this case. Koch's subsequent acquittal does not negate Bury's and Manley's initial probable cause determination. Accordingly, the district court did not err in dismissing Koch's malicious prosecution claim.

### B. First Amendment Retaliation Claim

Koch's second claim alleges that Defendant Meyer, the Ohio inspector general, retaliated against Koch for his public criticisms of ODNR fishing policy by refusing to investigate Koch's 2014 complaint against Defendant Bury and officer Abele. The district court found that whether or not Meyer was correct to decline to investigate Koch's complaint, Meyer was entitled to qualified immunity since there is no clearly established right to an inspector general's investigation. The district court also found that Koch's First Amendment claims against the remaining defendants failed because they did not cause the harm Koch alleges—Meyer did. On appeal, Koch recounts decades-old grievances against the ODNR and argues that his complaint was specific enough to state a claim against each of the Defendants. Appellant's Br. at 19–22.

Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives the person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). To state a claim for First Amendment retaliation, a plaintiff must allege: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005).

Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). To overcome Meyer's qualified immunity defense, Koch must be able to demonstrate that "the officer's conduct violated" the Constitution and that "clearly established" law at the time

would have showed as much. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Koch is correct that the fact-intensive nature of a qualified immunity defense often makes 12(b)(6) dismissal on qualified immunity grounds inappropriate, *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015), but we have upheld such dismissals when the "complaint establishes the defense." *Siefert v. Hamilton County*, 951 F.3d 753, 762 (6th Cir. 2020). This is such a case. Even if Koch's allegations are true and we assume they state a retaliation claim, Koch cites no case that would have put Meyer on notice that failing to open an inspector general investigation into Koch's complaints would violate the Constitution, and we are aware of no such case.

Koch's briefing contains additional facts and theories of liability for the First Amendment retaliation claim that were not clearly alleged in the Complaint, many of which appear to be far outside the applicable two-year statute of limitations. We find these additional theories to be without merit, and the district court did not err in dismissing them.

### C. Due Process Claim

Koch alleges he was deprived of due process when Meyer declined to open an investigation in response to his complaint "with no statement of the procedures utilized, the standard of review used or an opportunity for [Koch] to be heard in any meaningful way." R. 1, PID. 11 (Compl. ¶ 70). The Complaint does not specify whether Koch's claim is a substantive due process claim or a procedural due process claim, but the district court found that either way, Koch failed to plead the deprivation of an interest protected by state law or the Constitution.

The district court did not err in dismissing Koch's due process claim. With respect to Meyer's investigation, all Koch's allegations go to the process Meyer used in deciding not to open an investigation. Koch's allegations are therefore best categorized as a procedural due process claim. As such, Koch must show he was deprived of an interest protected by law, and the district

court correctly found that neither the Constitution nor Ohio law creates a protected interest in an inspector general investigation. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no . . . common law right, much less a constitutional right, to an investigation."); Ohio Rev. Code § 121.42(B) (outlining duties of inspector general).

Koch also argues that his commercial fisherman's license is a protected property interest and that "there is a liberty interest involved in this case due to [his] free speech claim." Appellant's Br. at 24. Koch's Complaint alleged neither as the basis for his due process claim, and even if the Complaint were read to include a due process claim for deprivation of Koch's fishing license and free speech, Koch was never prevented from speaking[2] and he never lost his fishing license. Without a deprivation, Koch cannot state a due process claim. *See Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005) ("Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest *and was deprived of that interest* will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process.") (emphasis added).

## D. Conspiracy

Koch alleges Defendants Meyer, Zody, Barna, Bury, and Manley conspired to take away his fishing license and deprive him of an inspector general investigation because of statements he made in 2000 and 2011 that were critical of ODNR policies. The district court interpreted Koch

---

[2] Such a claim would also fail because it is duplicative of Koch's First Amendment retaliation claim, and Koch cannot allege a claim based on substantive due process when a more explicit constitutional protection exists. *See Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (dismissing claim for violation of substantive due process right to free speech as duplicative of First Amendment retaliation claim); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (same).

to be alleging state and federal conspiracy claims and dismissed both for failing to allege how the various defendants each participated in the alleged conspiracy.

"It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Under Ohio law, "[a] plaintiff need not demonstrate an explicit agreement" but must at least plausibly allege "an understanding or common design between the parties to commit an improper act." *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)). Here, Koch alleges a wide-ranging conspiracy that includes the ODNR, the inspector general, and multiple officers of the ODNR, all acting in concert to retaliate against him for three statements he made over the course of two decades, of which Koch has not even alleged all of the defendants were aware. The district court did not err in concluding that the actions Koch describes in the Complaint fail to state a plausible conspiracy claim under either state or federal law.

### E. Failure to Supervise and Train

The Complaint alleges separate "failure to supervise" and "failure to train" claims. The failure to supervise claim alleges that Defendants ODNR, Zehringer, Meyer, Barna, and Zody failed to adequately supervise Defendants Bury and Manley because they did not discipline Barna and Manley after Koch complained about them. The "failure to train" claim alleges that ODNR, Zehringer, Meyer, Zody, and Barna were "on notice" that "[ODNR] employees had acted in an unprofessional manner in matters involving [Koch]" and failed to provide remedial training. *Id.*

at 14–15 (Compl. ¶¶ 91–92).[3]  The district court dismissed both claims because sovereign immunity bars any claim against ODNR, and *Monell* does not permit Koch to bring claims for failure to supervise or train against individual officers.

The district court did not err in dismissing Koch's final two claims.  *Monell* does not provide a basis for bringing a "failure to supervise" or "failure to train" claim against individual officers based on a respondeat superior theory.  *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982) ("The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees. Without more, such a theory would allow liability on a respondeat superior basis-a basis expressly rejected by the Supreme Court in *Monell* . . . ."); *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (attempt to sue individual officer for failure to adequately supervise without allegation of individual involvement "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability") (quoting *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008)).

To the extent Koch seeks to bring a § 1983 claim against the individual officers based on traditional principles of personal liability, he must allege that the Defendants "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Hays*, 668 F.2d at 874.  Koch's allegations again fall short.  As a threshold matter, Koch has not alleged any unconstitutional conduct; his failure to supervise and failure to train claims are dependent on his

---

[3] The Complaint does not specify whether these are state or federal claims, and the district court interpreted them to be asserting federal *Monell* claims.  Koch does not challenge this interpretation on appeal.  *See* Appellant's Br. at 29.

malicious prosecution and due process claims, which are inadequate. Second, even if Koch had sufficiently alleged a malicious prosecution claim, his bare allegation that Zehringer, Meyer, Zody, and Barna "encouraged and supported" malicious prosecution by failing to train and discipline is not enough—he must allege sufficient factual detail to make that claim *plausible*, as opposed to *possible*. *See Iqbal*, 556 U.S at 679. Koch's complaint fails to clear that hurdle.

**IV.**

For the reasons set forth above, we **AFFIRM**.

JOHN K. BUSH, Circuit Judge, concurring. I concur fully in the majority opinion because I believe that we are bound to assert jurisdiction over Koch's state-law damages claims against the defendant state officials in their personal capacities. *See Wilson v. Beebe*, 770 F.2d 578, 587–88 (6th Cir. 1985) (en banc). I write separately to urge this Court to reconsider its holding in *Wilson*.

"It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). The Supreme Court has applied that principle to bar actions for state-law claims for injunctive relief against state officials. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). In doing so, the *Pennhurst* Court emphasized that sovereign immunity applies when "'the state is the real, substantial party in interest' . . . regardless of whether [a suit] seeks damages or injunctive relief," with the exception of *Ex Parte Young*'s narrow rule. *Id.* at 101–02 (quotation omitted). I agree with Judge Sutton that the logic of *Pennhurst* applies to state-law claims for damages against state officials in their personal capacities when the claims arise from action taken within the scope of the defendants' official authority. *See In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 786–87 (6th Cir. 2017) (Sutton, J., concurring). Such claims seek to circumvent the Eleventh Amendment and interfere with state sovereignty in the same way that a claim seeking injunctive relief would.

15